# EXHIBIT A



**NC DEPARTMENT** *of* **INSURANCE**

**MIKE CAUSEY, COMMISSIONER**

SERVICE OF PROCESS

Tel 919.716.6610   Fax 919.716.6757



RECEIVED

AUG 1 2 2020

OFFICE OF THE GENERAL COUNSEL

August 7, 2020

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Government Employees Insurance Company
5260 Western Avenue
Chevy Chase, MD  20815-3799

Re:   Alicia McIver and Natasha Pierce
                    vs.
          Government Employees Insurance Company and GEICO Indemnity Company

Dear Corporate Secretary:

Enclosed herewith are documents entitled **Civil Summons and Class Action Complaint [Jury Trial Demanded]**, which this Department received through the mail on August 4, 2020.

MIKE CAUSEY
Commissioner of Insurance

Courtney H Ethridge
Special Deputy for
Service of Process

Enclosures



**NC** DEPARTMENT *of* INSURANCE

**MIKE CAUSEY,** COMMISSIONER

<u>Guilford Co. File No. 20 CVS 5934</u>

Alicia McIver and Natasha Pierce

    vs.

Government Employees Insurance Company and GEICO Indemnity Company

    I, Courtney H Ethridge, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons** of Plaintiff's Alicia McIver and Natasha Pierce and adding Government Employees Insurance Company as a Defendant, and acknowledge receipt of a copy of the same, together with a copy of the **Class Action Complaint [Jury Trial Demanded],** under the provision of the North Carolina General Statute Section 58-16-30 as process agent for Government Employees Insurance Company.

    This the 4th day of August, 2020.

                    MIKE CAUSEY
                    Commissioner of Insurance

                    Courtney H Ethridge
                    Special Deputy for
                    Service of Process

# STATE OF NORTH CAROLINA

**GUILFORD** _____ County

File No. 20 CVS 5934

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
ALICIA MCIVER and NATASHA PIERCE

*Address*

*City, State, Zip*

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

*Name Of Defendant(s)*
GOVERNMENT EMPLOYEES INSURANCE
COMPANY and GEICO INDEMNITY COMPANY

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Government Employees Insurance Company | GEICO Indemnity Company |
| c/o N.C. Commissioner of Insurance | c/o N.C. Commissioner of Insurance |
| Attn: Special Deputy for Service of Process | Attn: Special Deputy for Service of Process |
| 201 Mail Service Center | 201 Mail Service Center |
| Raleigh, NC 27699-1201 | Raleigh, NC 27699-1201 |

**IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
    served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)* | *Date Issued* | *Time* | |
|---|---|---|---|
| Jeremy R. Williams | 7-13-20 | 9:10 | ☐ AM ☐ PM |
| Whitfield Bryson LLP | *Signature* | | |
| 900 W. Morgan St. | | | |
| Raleigh, NC 27603 | | | |
| 919-600-5017; jeremy@whitfieldbryson.com | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | *Date Of Endorsement* | *Time* | ☐ AM ☐ PM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days | *Signature* | | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                                   SUPERIOR COURT DIVISION

GUILFORD COUNTY               Case No. 20 CVS 5934

ALICIA MCIVER and NATASHA PIERCE,
on behalf of themselves and all others similarly
situated,

                               **CLASS ACTION COMPLAINT**
                               **JURY TRIAL DEMANDED**

                Plaintiffs.

     v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
INDEMNITY COMPANY,

             Defendants.

Plaintiffs Alicia Mciver ("Mciver") and Natasha Pierce ("Pierce") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Defendants Government Employees Insurance Company and GEICO Indemnity Company ("Defendants"), and in support state:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiffs, the named insureds under Defendants' automobile policies issued for private passenger auto physical damage including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV."

2.      Defendants are of the largest private passenger auto insurance carriers operating in North Carolina. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief, Defendants systematically underpaid not just Plaintiffs, but thousands of other putative class members, amounts Defendants owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiffs on behalf of themselves and all others

1

similarly situated insureds who suffered damages due to Defendants' practice of refusing to pay full ACV payments to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendants fail to include North Carolina's 3% highway-use tax ("Sales Tax") and North Carolina title transfer and license plate fees ("Vehicle Title and Registration Fees") in its calculation of ACV when making a total loss payment to its insureds.

4.     The failure to pay full ACV to first-party total losses owed to the insureds is a breach of the policy agreement and a clear breach of contract under North Carolina law.

## JURISDICTION AND VENUE

5.     This is an action for declaratory relief and breach of contract for damages in excess of $25,000 exclusive of interest, costs, and attorneys' fees.

6.     At all material times, Plaintiff Mciver was an adult resident and citizen of the State of North Carolina.

7.     At all material times, Plaintiff Pierce was an adult resident and citizen of the State of North Carolina.

8.     This Court has personal jurisdiction over Defendants because the Defendants regularly engage in business in North Carolina, and therefore have sufficient minimum contacts with North Carolina and/or intentionally avail themselves of the North Carolina market through the solicitation, promotion, marketing, and sale of insurance policies in North Carolina.

9.     Venue is proper in this Court pursuant to N.C. Gen. Stat. §1-82 because Plaintiff Pierce resides in Guilford County.

## PARTIES

10.     At all times material hereto, Plaintiff Mciver was a citizen of the State of North

2

Carolina and domiciled in New Hanover County.

11. At all times material hereto, Plaintiff Pierce was a citizen of the State of North Carolina and domiciled in Guilford County.

12. At all times material hereto, Defendants are and were authorized to transact in the insurance business in the State of North Carolina and conducted a substantial part of its business in Guilford County, North Carolina.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

13. Defendants' standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by the Defendants in North Carolina.

14. In the case of a total loss, full ACV includes an obligation to pay Sales Tax and Vehicle Title and Registration Fees for total loss vehicle comprehensive and collision coverage.

### Plaintiff Mciver's Total Loss Claim

15. At all times material hereto, Plaintiff Mciver owned a 2002 Honda Accord with VIN 1HGCG66832A050608 ("Mciver Insured Vehicle").

16. At all times material hereto, Plaintiff Mciver insured the vehicle under a policy issued by Defendant Government Employees Insurance Company. Plaintiff Mciver's policy, (the "Insurance Policy") is affixed hereto as Exhibit A.

17. On or about July 14, 2017, Plaintiff Mciver was involved in an accident while operating the Mciver Insured Vehicle. As a result of said accident, Plaintiff Mciver filed a claim for property damage with Defendant Government Employees Insurance Company, claim number 0589614430101029-01.

18. Following the filing of said claim, Defendant Government Employees Insurance

3

Company determined that the Mciver Insured Vehicle was a total loss with a base value of $2,456.00.

19.     The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage, which produced the CCC Market Valuation Report, attached hereto as Exhibit B.

20.     CCC then added $97.00 as a condition adjustment and determined that the Adjusted Vehicle Value was $2,553.00. See id.

21.     CCC then added $76.59 for the applicable 3% North Carolina vehicular tax and concluded that the total value (after a $250 deductible) was $2,379.59. See id.

22.     No amount for the Vehicle Title and Registration Fees was included in the amount listed in the CCC Market Valuation Report. See id.

23.     Notably, the CCC Market Valuation Report stated that, "The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." See id.

24.     Relying on the CCC Valuation Report, Defendant Government Employees Insurance Company used the Base Value of $2,456.00, added the $97.00 condition adjustment, subtracted the deductible of $250.00 and then subtracted a retention amount of $465.98 for a net total payment of $1,837.02. A copy of the Settlement Statement is attached hereto as Exhibit C.

25.     Although CCC included Sales Tax as part of its total value, Defendant Government Employees Insurance Company did not include Sales Tax as part of its ACV payment.[1]

---

[1] Curiously, the Settlement Statement adds Sales Tax in the amount of $76.59, but then subtracts that amount out, and ultimately does not pay Sales Tax as part of the ACV payment. See Ex. C.

4

26.     Defendant Government Employees Insurance Company's ACV payment of $1,837.02 did not include Sales Tax or Vehicle Title and Registration Fees.

## Plaintiff Pierce's Total Loss Claim

27.     At all times material hereto, Plaintiff Pierce owned a 1999 Honda Accord with VIN 1HGCG5641XA141424 ("Pierce Insured Vehicle").

28.     At all times material hereto, Plaintiff Pierce insured the vehicle under a policy issued by Defendant GEICO Indemnity Company. See Ex. A, the Insurance Policy.

29.     On or about July 19, 2019, Plaintiff Pierce was involved in an accident while operating the Pierce Insured Vehicle. As a result of said accident, Plaintiff Pierce filed a claim for property damage with Defendant GEICO Indemnity Company, claim number 0474663040107049.

30.     Following the filing of said claim, Defendant GEICO Indemnity Company determined that the Pierce Insured Vehicle was a total loss with a base value of $1,442.00.

31.     The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage, which produced the CCC Market Valuation Report, attached hereto as Exhibit D.

32.     CCC then subtracted $209.00 as a condition adjustment and determined that the Adjusted Vehicle Value was $1,233.00. See id.

33.     CCC then added $36.99 for the applicable 3% North Carolina vehicular tax and concluded that the total value was $1,269.99. See id.

34.     No amount for the Vehicle Title and Registration Fees was included in the amount listed in the CCC Market Valuation Report. See id.

35.     Notably, the CCC Market Valuation Report stated that, "The total may not

5

represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." See id.

36. Relying on the CCC Valuation Report, Defendant GEICO Indemnity Company took the base value of $1,442.00, subtracted a "Pre-Loss Deduction" of $245.99, added sales tax in the amount of $36.99, and then subtracted the salvage value of $175.00 for a net total payment of $1,058.00, which did not include Vehicle Title and Registration Fees. A copy of the Settlement Statement is attached hereto as Exhibit E.

37. The failure to include Sales Tax and/or Vehicle Title and Registration Fees in making the total loss payment to McIver and Pierce is a breach of the Insurance Policy, which promises to provide the full value of the total loss vehicle. including these mandatory replacement amounts.

38. Sales Tax and Vehicle Title and Registration Fees are all mandatory applicable fees that must be paid to purchase any vehicle in the State of North Carolina.

39. North Carolina law requires that all vehicles be properly titled and registered to be legally driven on North Carolina roadways. The fee to transfer title to a vehicle is, at minimum, $52.00.

40. North Carolina law requires that all vehicles have proper license plate (or tag) to be legally driven on North Carolina roadways. The fee to transfer license plate or tag is no less than $20.

41. North Carolina law requires that all vehicles be subject to a Sales Tax of 3%.

42. Plaintiff McIver was owed, at minimum (a) title transfer fees of $52.00, plus (b)

6

tag transfer fees of $20.00, plus (c) $76.59[2] in Sales Tax, which Defendant GEICO Indemnity Company never paid.

43. Plaintiff Pierce was owed, at minimum (a) title transfer fees of $52.00, plus (b) tag transfer fees of $20.00, which Defendant GEICO Indemnity Company never paid.

44. In breach of its contracts with Plaintiffs, Defendants did not include Sales Tax and/or Vehicle Title and Registration Fees in making the ACV payment for Plaintiffs' total loss.

45. Defendant Government Employees Insurance Company, pursuant to its standard and uniform business practice, never pays insureds Sales Tax or Vehicle Title and Registration Fees after a total loss to an insured vehicle to insureds similarly situated to Mciver.

46. Defendant GEICO Indemnity Company, pursuant to its standard and uniform business practice, never pays insureds Vehicle Title and Registration Fees after a total loss to an insured vehicle to insureds similarly situated to Pierce.

47. Defendants' failure to pay Sales Tax and/or Vehicle Title and Registration Fees constitutes a breach of the Insurance Policy.

48. In doing so, Defendants underpaid Plaintiffs in the amount of the mandatory costs inherent to securing a replacement vehicle, thereby violating the Insurance Policy.

49. Plaintiffs and all members of the putative class paid all premiums owed and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused.

---

[2] This amount represents 3% of the Adjusted Vehicle Value of $2,553.00. See Exhibit B. Plaintiff Mciver does not contest Defendant GEICO Indemnity Company's valuation of the amount of loss for the Insured Vehicle, only Plaintiff Mciver's entitlement to ACV, which includes the payment of Sales Tax and Vehicle Title and Registration Fees, which Plaintiff Mciver was not paid.

7

## THE DEFENDANTS' POLICY

50.     Defendants issued the same form of Insurance Policy to Plaintiffs, which is representative of the policy language governing the insureds in the putative class, under the section entitled "PART D – COVERAGE FOR DAMAGE TO YOUR AUTO", states that Defendants "will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment." Ex. A at 15 of 26 (emphasis in original).

51.     The "covered auto" is defined as any vehicle shown in the Declarations, attached hereto as Composite Exhibit F (as to Mciver) and Exhibit G (as to Pierce).

52.     In "Part D" of the Insurance Policy, under a subsection entitled "Limit of Liability", Defendants both state, in relevant part:

> Our limit of liability will be the lesser of the:
>
>    1.     Actual cash value of the stolen or damaged property; or
>
>    2.     Amount necessary to repair or replace the property with other property of like kind and quality.
>
> \*\*\*
>
> An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

Ex. A at 17 of 26.

53.     ACV is not specifically defined in the policy.

54.     Thus, the policy language does not further define ACV as including: (1) any provision excluding Sales Tax and/or Vehicle Title and Registration Fees from ACV; or (2) any provision deferring payment of Sales Tax and/or Vehicle Title and Registration Fees for any purpose whatsoever.

55.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

8

## PAYMENT OF MANDATORY FEES

56.     Courts throughout the country have recognized that "actual cash value", when undefined in an insurance policy, should be defined as the repair or replacement cost minus depreciation – a definition which would include fees necessarily incurred upon replacement of the insured vehicle, including Sales Tax and Vehicle Title and Registration Fees.

57.     Sales Tax and Vehicle Title and Registration Fees are examples of elements constituting the full ACV owed to insureds in the event of a total loss.

58.     By operation of law and in the view of a reasonable insured, Defendants' policies promise to provide costs to be incurred upon replacement of the vehicle.   Otherwise, the Defendants' insureds, including Plaintiffs, are not paid the amount sufficient to purchase a replacement vehicle.

59.     Nevertheless, Defendants decline to include Sales Tax and/or Vehicle Title and Registration Fees in making ACV payments to total loss insureds thereby breaching their contracts with insureds.

## CLASS ALLEGATIONS

60.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

61.     Plaintiffs seek to represent on a class-wide basis all persons similarly situated, the class ("Class") defined as follows:

> All insureds, under any North Carolina policy issued by Government Employees Insurance Company or Geico Indemnity Company and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle

9

was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the applicable statute of limitations period until the date of class certification, who were not paid Sales Tax and/or Vehicle Title and Registration Fees.

62. Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

63. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

A. Numerosity

64. Although the precise number of Class members are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are of the largest motor vehicle insurers in the State of North Carolina and write hundreds of millions of dollars of private-passenger physical damage coverage premiums, the Class of persons affected by Defendants' unlawful practices consists of thousands of individuals or the Class of persons affected are otherwise so numerous that joinder of all Class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized Insurance Policy language, and results in the retention by Defendants of insurance benefits properly owed to Plaintiffs and the Class members. The Class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the Class as any individual who is an insured of Defendants in the Class period and received an ACV that did not include Sales Tax and/or Vehicle Title and Registration

10

Fees will be a member of the Class.

65.     Upon information and belief, Defendants uniformly fail to pay Sales Tax and/or Vehicle Title and Registration Fees in total loss cases. Accordingly, the Class consists of many thousands, if not tens of thousands, of Defendants' insureds who were not paid in violation of their insurance policies. Thus, the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

**B. Commonality**

66.     Common questions of law and fact predominate in this matter because Defendants' conduct towards the members of the Class is identical. Defendants uniformly fail to pay Sales Tax and/or Vehicle Title and Registration Fees in total loss cases.

67.     Plaintiffs share a common interest with all members of the putative Class in the objects of the action and the relief sought.

68.     Plaintiffs satisfy the commonality requirement because their claims arise from a practice which Defendants' apply uniformly to all its similarly situated Class members and are based on the same legal theories as all other members of the putative Class, that failing to pay Sales Tax and/or Vehicle Title and Registration Fees in total loss cases violates the uniform insurance policies. Because Defendants' conduct was uniform as to all Class members, the material elements of Plaintiffs' claims and those of absent Class members are subject to common proof, and the outcome of Plaintiffs' individual actions will be dispositive for the Class. The common questions include, but are not limited to, the following: (a) whether, under the Defendants' standardized policy language, Plaintiff and the Class members are owed ACV Sales Tax and/or Vehicle Title and Registration Fees upon the total loss of an insured vehicle; (b) whether the Defendants have breached its insurance contracts with the Plaintiffs and the Class

11

members by failing to pay ACV Sales Tax and/or Vehicle Title and Registration Fees upon the total loss of an insured vehicle; (c) whether Defendants' routine failure to pay full ACV to Plaintiffs and each Class member violated N.C.G.S. § 58-63-15(11) (f), (g), and (h); and (d) whether Defendants violated N.C.G.S. §75-1.1, *et seq.* by not intending to pay full ACV in the event of a claim by Plaintiffs and each Class member at the time Plaintiffs and each Class member obtained his/her respective policy from Defendant.

## C. Typicality

69.  Plaintiffs' claims are typical of the claims of all other members of the Class because all such claims arise from the Defendants' failure to pay Sales Tax and/or Vehicle Title and Registration Fees on total loss claims of insured vehicles.

70.  Plaintiffs' and Class members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including Sales Tax and/or Vehicle Title and Registration Fees, for first-party total loss claims. The material facts underlying the claims of each putative Class member are the same material facts as those supporting the Plaintiffs' claims alleged herein and require proof of the same material facts.

## D. Adequacy

71.  Plaintiffs can and will adequately represent the putative Class and their interests are common to, and coincident with, those of all absent Class members. By proving their individual claims, Plaintiffs will necessarily prove the claims of the putative Class and prove Defendants' liability to the Class. Plaintiffs have no known conflicts of interest with any members of the Class; their interests and claims are not antagonistic to those of any other Class members; nor are their claims subject to any unique defenses.

72.  The representative Plaintiffs therefore can and will fairly and adequately protect

12

and represent the interests of the Class.

73.     Kopelowitz Ostrow Ferguson Weiselberg Gilbert; Edelsberg Law P.A., Shamis & Gentile, P.A., Dapeer Law, P.A. and Whitfield Bryson LLP, Plaintiffs' counsel, have extensive experience in complex commercial litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

74.     If appointed Class representative, Plaintiffs are aware of, and are committed to, faithfully upholding their fiduciary duties to absent Class members. Plaintiffs and their counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

75.     Plaintiffs and their counsel will therefore fairly and adequately assert and protect the interest of the Class.

### E. Predominance and Superiority

76.     A class action provides a fair and efficient method for the adjudication of this controversy. Class treatment is a superior form of adjudication than the prosecution of individual claims and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits, and the risk of inconsistent results.

77.     Because Defendants' conduct was uniform with respect to all prospective Class members, common questions of law and fact predominate over individual questions.

78.     Because the Class encompasses many thousands of claims (if not tens of thousands of claims), a single, state-wide class action is plainly more efficient than many thousands of individual lawsuits, each requiring the same discovery and proofs. Given the relatively small amount of the claim(s) of each putative Class member, it is likely that absent class representation, such claims would not be brought, and the Class would never have

13

appropriate redress for Defendants' improper conduct. A class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy.

79.    Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendants and other similar businesses from engaging in such wrongful conduct in the future.

80.    In addition, the expense and burden of individual litigation effectively makes it a practical impossibility for individual Class members to seek redress for the wrongs alleged herein.

81.    The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial effort that would result from thousands of separate adjudications or the unfairness of none at all, which is the likely outcome if the small individual claims at issue are not aggregated as a Class.

82.    There are also no unusual difficulties likely to be encountered in the maintenance of this action as a class suit, and this Court can effectively manage the class action.

83.    The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendants keep records of insurance policies and claims of prospective Class members during the class period, including records of total loss vehicles. Therefore, both the membership of the Class and the amount of individual damages is readily ascertainable from Defendants' records.

**F.  Declaratory Relief Under Rule 23**

84.    Class treatment is warranted because Defendants have acted or refused to act on

14

grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

85.     Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendants and other similar businesses from engaging in such wrongful conduct in the future.

86.     Because Defendants have acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

87.     Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

88.     Plaintiffs have retained the undersigned counsel and has agreed to pay reasonable attorney's fees and costs.

## COUNT I
## BREACH OF CONTRACT

89.     The allegations in paragraph 1 through 88 are hereby incorporated by reference.

90.     This count is brought by Plaintiffs on behalf of themselves and on behalf of all members of the Class.

91.     Plaintiffs were party to substantially similar form contracts, the Insurance Policy, with Defendants as described herein. See Exhibit A. All members of the Class are or were parties to an Insurance Policy contract with one of the Defendants containing materially identical terms.

92.     North Carolina law governs the interpretation and construction of insurance

15

policies of Plaintiffs and all members of the Class with Defendants.

93. Plaintiffs and all members of the Class made claims determined by Defendants to be first party total losses under the Insurance Policy and determined by Defendants to be covered claims.

94. Defendants, in paying the total loss claims, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the insurance policies necessary to be paid on the total loss.

95. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class member were owed the ACV of the vehicle.

96. Defendants breached that obligation by failing to include Sales Tax and/or Vehicle Title and Registration Fees in the ACV payment, thereby failing to pay the vehicle's ACV to Plaintiffs and every Class member.

97. Defendants' failure to provide the promised coverage constitutes a material breach of contracts with Plaintiffs and every Class member.

98. As a result of said breaches, Plaintiffs and the Class members have been damaged in an amount in excess of twenty five thousand dollars ($25,000) and are entitled under Defendants' insurance policies to sums representing the benefits owed for full ACV payment, including Sales Tax and/or Vehicle Title and Registration Fees, as well as prejudgment and post-judgment interest, and other relief as is appropriate.

## COUNT II
## DECLARATORY RELIEF

99. The allegations in paragraph 1 through 88 are hereby incorporated by reference.

100. This count seeks declaratory relief pursuant to G.S. § 1-253, *et seq*.

101. This count is brought by Plaintiffs on behalf of themselves and all members of the

16

Class.

102.     Plaintiffs were party to substantially similar form contracts, the Insurance Policy, with Defendants as described herein.  See Exhibit A.  All members of the Class are or were parties to an Insurance Policy contract with Defendants containing materially identical terms.

103.     North Carolina law governs the interpretation and construction of Plaintiffs and all Class members' insurance policies with Defendants.

104.     Plaintiffs seek a declaratory judgment that an insured is entitled to Sales Tax and Vehicle Title and Registration Fees as part of a vehicle's ACV total loss payment under the insurance policies that govern Plaintiffs' and the Class members' contractual relationships with Defendants.

105.     Plaintiffs contend Defendants are required to pay Sales Tax and Vehicle Title and Registration Fees as part of a vehicle's ACV total loss payment under the insurance policies that govern Plaintiffs and the Class members relationship with Defendants.

106.     Defendants disagree with Plaintiffs' interpretation of the Insurance Policy.

107.     Because of Defendants' claim to the contrary, Plaintiffs are in doubt as to their rights under the Insurance Policy.

108.     The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiffs and Defendants as to entitlement to the Sales Tax and Vehicle Title and Registration Fees.

109.     The above allegations reflect that Plaintiffs have presented a justiciable question as to the existence of their right to the Sales Tax and Vehicle Title and Registration Fees.

110.     All antagonistic and adverse interests, namely Plaintiffs and Defendants and the Class when certified, are before this Court by the filing of this count.

17

111. Pursuant to G.S. § 1-253, *et seq.*, Plaintiffs are entitled to a declaration of their right to Sales Tax and Vehicle Title and Registration Fees to resolve their doubt about their rights under the Insurance Policy considering the Defendants' position otherwise.

112. Upon the Court granting Plaintiffs the declaratory relief requested herein, Plaintiffs will move the Court pursuant to G.S. § 1-259 for supplemental relief in the form of an order directing that the Sales Tax and Vehicle Title and Registration Fees be paid to Plaintiffs, and the Class, if certified, as well as a judgment for prejudgment interest and post-judgment interest, as the Sales Tax and Vehicle Title and Registration Fees represent a liquidated amount.

<div align="center">

**COUNT III**
**VIOLATION OF THE NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**G.S. § 75-1.1, *et seq.***

</div>

113. The allegations in paragraph 1 through 88 are hereby incorporated by reference.

114. This count seeks relief pursuant to North Carolina's Unfair And Deceptive Trade Practices Act, G.S. § 75-1.1, *et seq.* ("UDTPA")

115. This count is brought by Plaintiffs on behalf of themselves and all members of the Class.

116. Defendants' acts, as alleged herein, were acts in or affecting commerce, violate the provisions of N.C.G.S. § 58-63-15, and constitute unfair and deceptive trade practices in violation of N.C.G.S. §§ 75-1.1 *et seq.*

117. Defendants' conduct and practices toward Plaintiffs and each Class member was immoral, unethical, unscrupulous, or substantially injurious. Moreover, Defendants engaged in conduct manifesting an inequitable assertion of its power or position, making its conduct an unfair act or practice.

118. In settling Plaintiffs' and each Class member's total loss claims by not paying the

18

full ACV, Defendants violated provisions of N.C.G.S. § 58-63-15(11) which amount to violations of N.C.G.S. §75-1.1, as a matter of law.

119. Specifically, by routinely not paying the full ACV, Defendants' settlement practices violated N.C.G.S. § 58-63-15(11) (f), (g), and (h).

120. Defendants violated N.C.G.S. § 58-63-15(11)(f) because it did not attempt in good faith to effectuate fair and equitable settlements with Plaintiffs and each Class member because it did not pay the full ACV, which it was obligated to do.

121. Defendants violated N.C.G.S. § 58-63-15(11)(g) because its routine practice of not paying the full ACV to Plaintiffs and each Class member forced them to institute this litigation to recover the full ACV to which they are entitled.

122. Defendants violated N.C.G.S. § 58-63-15(11)(h) because its routine practice of not paying the full ACV resulted in Defendants settling the claims of Plaintiffs and each Class member for less than what a reasonable person would have believed she was entitled, which is the amount sufficient to purchase a replacement vehicle.

123. Because of its routine business practice of not paying full ACV, at the time that Plaintiffs and each Class member obtained an insurance policy from Defendants, Defendants knew that it would not pay the full ACV in the event a claim was made by Plaintiffs and each Class member.

124. The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiffs and each member of the Class.

125. Plaintiffs and the Class suffered actual injury as the proximate result of Defendants' unfair actions. Such injury consists of the Defendants' failure to pay full ACV for first-party total losses owed to the insureds as will be shown at trial of this action.

19

126. Plaintiffs and each member of the Class have been damaged and are entitled to recover treble damages, costs, and attorneys' fees incurred in this action.

127. Defendants' unfair and deceptive trade practices have directly and proximately caused Plaintiffs and the Class damages in an amount in excess of twenty-five thousand dollars ($25,000) plus costs and expenses as allowed by law.

128. By reason of the foregoing, Plaintiffs and each member of the Class is entitled to have the damages trebled and have the costs of this action, including reasonable attorney's fees, taxed against Defendants pursuant to N.C.G.S. §§ 75-16 and 75-16.1.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all triable issues and seeks relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed under the Policies;

3. For declaratory relief to be entered for Plaintiffs and the Class that their interpretation of the Insurance Policy is correct, thereby requiring Defendants to pay Sales Tax and Vehicle Title and Registration Fees;

4. Treble damages and attorney's fees for unfair and deceptive trade practices as provided in N.C. Gen. Stat. §§ 75-16 and 75-16.1;

5. For all other damages according to proof;

6. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

20

7. For costs of suit incurred herein;

8. For pre and post judgment interest on any amounts awarded;

9. For other and further forms of relief as this Court deems just and proper.

Dated: July 2, 2020

Respectfully submitted,

Daniel K. Bryson, Bar No. 15781
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@whitfieldbryson.com
jeremy@whitfieldbryson.com

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
ostrow@kolawyers.com
Jonathan Streisfeld (*pro hac vice* to be filed)
streisfeld@kolawyers.com
Josh Levine (*pro hac vice* to be filed)
levine@kolawyers.com
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-449-4602

**EDELSBERG LAW, P.A.**
Scott Edelsberg (*pro hac vice* to be filed)
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (*pro hac vice* to be filed)
ashamis@shamisgentile.com

21

14 N.E 1st Ave Ste. 1205
Miami, FL 33132
Telephone: 305-479-2299

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice* to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

*Counsel for Plaintiff and Putative Class*

22

# GEICO

ONE GEICO PLAZA
Washington, D.C. 20076-0001
Telephone: 1-800-841-3000



EXHIBIT
A

# Your
# Personal
# Automobile
# Policy

Government Employees Insurance Company
GEICO Indemnity Company

A-6 (2-06) NC 00 01 (Ed. 6-05)

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 28 of 135

# YOUR PERSONAL AUTO POLICY QUICK REFERENCE

| | |
|---|---|
| **Agreement** | 3 |
| **Definitions** | 3 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Supplementary Payments | 4 |
| Exclusions | 4 |
| Limit of Liability | 6 |
| Out of State Coverage | 6 |
| Financial Responsibility Required | 6 |
| | |
| Other Insurance | 6 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 6 |
| Exclusions | 7 |
| Limits of Liability | 8 |
| Non-Duplication | 8 |
| Other Insurance | 8 |
| Arbitration | 8 |

**PART C1 - UNINSURED MOTORIST COVERAGE**

| | |
|---|---|
| Insuring Agreement | 8 |
| Exclusions | 9 |
| Limits of Liability | 10 |
| Other Insurance | 10 |
| Our Right to Recover Payment | 10 |
| Arbitration | 11 |

**PART C2 - COMBINED UNINSURED/UNDERINSURED MOTORIST COVERAGE**

| | |
|---|---|
| Insuring Agreement | 11 |
| Exclusions | 12 |
| Limits of Liability | 13 |
| Our Right to Recover Payment | 14 |
| Other Insurance | 14 |
| Arbitration | 14 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 15 |
| Transportation Expenses | 15 |
| Salvage Charges | 16 |
| Exclusions | 16 |
| Limits of Liability | 17 |
| Payment of Loss | 17 |
| No Benefit to Bailee | 18 |
| Other Insurance | 18 |
| Appraisal | 18 |
| Loss Payee | 18 |

**PART E - DUTIES AFTER AN ACCIDENT OF LOSS - FILING A CLAIM**

| | |
|---|---|
| General Duties | 18 |
| Additional Duties for Uninsured Motorists Coverage | 18 |
| Additional Duties for Coverage for Damage to your | 19 |

**PART F - DUTIES AFTER AN ACCIDENT OF LOSS - FILING A CLAIM**

| | |
|---|---|
| Bankruptcy | 19 |
| Changes | 19 |
| Fraud in Connection with Accident or Loss | 19 |
| Legal Action Against Us | 19 |
| Our Rights to Recover Payment | 20 |
| Policy Period and Territory | 20 |
| Termination | 20 |
| Cancellation | 20 |
| Nonrenewal | 21 |
| Automatic Termination | 21 |
| Other Termination Provisions | 21 |
| Transfer of Your Interest in this Policy | 21 |
| Auto Repairs | 21 |
| Choice of Law | 22 |

Case 1:20-cv-00839  Document 1-1  Filed 09/11/20  Page 29 of 135

This policy is a legal contract between you and us. The Personal Auto Policy is:

$ designed for easy reference;

$ simplified to make it more understandable; and

$ arranged to better display the available coverages.

## READ YOUR POLICY CAREFULLY

## PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

"We", "us" and "our" refer to the Company providing this insurance.

For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

    1. Under a written agreement to that person; and

    2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are boldfaced or in quotation marks when used.

"Bodily Injury" means bodily harm, sickness or disease, including death that results

"Business" means trade, profession or occupation.

"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

"Occupying" means in; upon; getting in, on, out or off.

"Property damage" means physical injury to, destruction of, or loss of use of tangible property.

"Trailer" means a vehicle designed to be pulled by a:

    1. Private passenger auto or station wagon type; or

    2. Pickup truck or van.

It also means a farm wagon or farm implement while pulled by a vehicle listed in 1. or 2. above.

"Your covered auto" means:

    1. Any vehicle shown in the Declarations.

    2. Any **newly acquired auto.**

    3. Any **trailer** you own.

    4. Any auto or **trailer** not owned by you while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

      a breakdown;

      b. repair;

      c. servicing;

      d. loss; or

      e. destruction.

This provision (4.) does not apply to Part D - Coverage For Damage To Your Auto.

"Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

    1. a private passenger auto or station wagon type; or

    2. a pickup truck or van that:

      a. has a Gross Vehicle Weight as specified by the manufacturer of less than 10,000 pounds; and

      b. is not used for the delivery or transportation of goods and materials unless such use is:

*40040C0066163503206901616D*

(1) incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or
(2) for farming or ranching.

Any coverage for a **newly acquired auto** is subject to the following:

1. If a **newly acquired auto** replaces a vehicle show in the Declaration, it will have the same coverage as the vehicle it replaced except that coverage, if any, under Part D - Coverage For Damage To Your Auto applies only if you ask us to insure it within 30 days after you become the owner

2. If a **newly acquired auto** is in addition to any shown in the Declaration, it will have the broadest coverage we now provide for any vehicle shown in the Declarations if you ask us to insure it within 30 days after you become the owner.

3. Coverage under this policy terminates for any **newly acquired auto** on the effective date and time of a policy (other than this policy) issued by us or any other company that describes such vehicle on its declaration page.

4. If you ask us to insured a **newly acquired auto** within the applicable specified time period described in 1. or 2. above, any coverage we provide for the **newly acquired auto** begins on the date you become the owner. If you ask us to insured a **newly acquired auto** after the applicable specified time period described above has elapsed, any coverage we provide for the **newly acquired auto** will begin at the time you request the coverage. You must pay us any added amount due for any coverage we provide for a **newly acquired auto**.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the insured. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

"**Insured**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**
2. Any person using **your covered auto**.
3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4. For any auto or **trailer**, other than **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or **trailer**.

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability:

1. We will pay the following on behalf of an **insured**:
   a. Premiums on appeal bonds and bonds to release attachments in any suit we defend. We have not duty to purchase bonds in an amount exceeding our Limit of Liability, and we have not duty to apply for or furnish these bonds; and
   b. All costs taxed against the **insured** and interest accruing after a judgment is entered in any suit we defend. Costs do not include prejudgment interest. Our duty to pay post-judgment interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for the coverage.

2. We will pay the following to an **insured**:
   a. Up to $250 for the cost of bail bonds required because of traffic law violations resulting from an accident. The accident must result in **bodily injury** or **property damage** covered under this policy.
   b. Up to $200 a day for loss of wages or salary, but not other income, because of attendance to hearings or trials at our request;
   c. Up to $200 for expenses incurred by an **insured** for Emergency first aid to others performed at the scene of an accident that involves any auto covered by this policy; and
   d. Other reasonable expenses incurred at our request

The amount of any costs, wages, salary, or other expenses listed above that are incurred by an **insured** must be reported to us by such **insured** before we will make payment.

### EXCLUSIONS

A. We do not provide Liability coverage for any **insured**:

   1. Who intentionally causes **bodily injury** or **property damage**. This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 31 of 135

2. For **property damage** to property owned or being transported by that **insured.**

3. For **property damage** to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that **insured.** This exclusion does not apply to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This exclusion does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business of:**
   a. selling;
   b. repairing;
   c. servicing;
   d. storing; or
   e. parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of **your covered auto** by:
   a. **you;**
   b. any **family member;** or
   c. any partner, agent or employee of you or any **family member.**
   This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion 6. This exclusion does not apply to the maintenance or use of a:
   a. private passenger auto;
   b. pickup or van that:
      (1) You own; or
      (2) You do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:
         (a) breakdown;
         (b) repair;
         (c) servicing;
         (d) loss, or
         (e) destruction; or
   c. trailer used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that insured is entitled to do so.

   This Exclusion A.8. does not apply to a **family member** using **your covered auto** which is owned by you.

9. For **bodily injury** or **property damage** for which that **insured:**
   a. is an insured under a nuclear energy liability policy; or
   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

   1. Any vehicle, other than **your covered auto,** which is:
      a owned by you; or
      b. furnished for your regular use

Case 1:20-cv-00839 Document 1-1 Filed 09/11/20 Page 32 of 135

2. Any vehicle, other than **your covered auto**, which is:
   a. owned by any **family member**; or
   b. furnished for the regular use of any **family member**.

   However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

   a. owned by a **family member**; or
   b. furnished for the regular use of a **family member**.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for each person for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property Damage Liability Coverage is our maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most we will pay as a result of any one auto accident regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy will comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

---

## PART B - MEDICAL PAYMENTS COVERAGE

---

## INSURING AGREEMENT

We will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury**:

1. Caused by accident; and

2. Sustained by an **insured**.

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

Reasonable medical expenses do not include expenses:

1. For treatment, services, products or procedures that are:
   a. Experimental in nature, for research, or not primarily designed to serve a medical purpose; or
   b. Not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the **bodily injury**; or

2. Incurred for:
   a. The use of thermography or other related procedures of a similar nature; or
   b. The use of acupuncture or other related procedures of a similar nature; or

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 33 of 135

c. The purchase or rental of equipment not primarily designed to serve a medical purpose.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

"**Insured**" as used in this Part means:

1. You or any **family member**:
   a. while **occupying**; or
   b. as a pedestrian when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying**:
   a. **your covered auto**; or
   b. any other motor vehicle:
      (1) operated by you; or
      (2) operated by a **family member** if the motor vehicle is a private passenger auto or **trailer**

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Sustained while **occupying** any vehicle located for use as a residence or premises.

3. Occurring while employed or otherwise engaged in the **business** of:
   a. selling;
   b. repairing;
   c. servicing;
   d. storing; or
   e. parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion applies only if workers' compensation benefits are available for the **bodily injury**.

4. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:
   a. owned by you; or
   b. furnished for your regular use.

5. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:
   a. owned by any **family member**; or
   b. furnished for the regular use of any **family member**.
   However, this exclusion does not apply to you.

6. Sustained while **occupying** a vehicle without a reasonable belief that that **insured** is entitled to do so.

7. Sustained while occupying any auto not owned by, or furnished for the regular use of, you or any **family member**, while used to carry persons or property for a fee. This exclusion does not apply to:
   a. a share-the-expense car pool; or
   b. you or any **family member**.

8. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member**, while that **insured** is engaged in the **business** of:
   a. selling;
   b. repairing;
   c. servicing;
   d. storing; or
   e. parking;

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 34 of 135

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to you or any **family member**.

9. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member** while that insured is employed or otherwise engaged in any **business** not described in Exclusion 8. This exclusion does not apply:

   a. to you or any **family member**; or
   b. if the **bodily injury** results from the operation of a private passenger auto or **trailer** by you.

10. Caused by or as a consequence of:

    a. war (declared or undeclared);
    b. civil war;
    c. insurrection; or
    d. rebellion or revolution.

11. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations; or
3. Vehicles involved in the accident.

## NON-DUPLICATION

No person for whom medical expenses are payable under this coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall by excess over any other collectable auto insurance providing payments for medical or funeral expenses.

## ARBITRATION

The amount due under this coverage shall be decided by agreement between the **insured** and us. If there is no agreement, the amount due shall be decided by arbitration upon written request of the **insured** or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the **insured**, any assignee of the **insured** and any person or organization with whom the **insured** expressly or implied contracts for the rendition of medical services. The arbitrators' decision shall be limited to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being equal only to the reasonable expenses for necessary services. The arbitrators shall not award punitive damages or other noncompensatory damages.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the **insured** resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

## PART C1 - UNINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and
2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured motorist.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 35 of 135

"**Insured**" as used in this Part means:

1. **You** or any **family member**.
2. Any other person occupying:

   a. **your covered auto**; or
   b. any other auto operated by you.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

"**Property damage**" as used in this Part means injury to or destruction of:

1. **Your covered auto**.
2. Any property owned by a person listed in 1. or 2. of **insured**

"**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type.

1. To which neither:

   a. a liability bond or policy; or
   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;

   applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.

3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. **you** or any **family member**;
   b. a vehicle which **you** or any **family member** are occupying; or
   c. **your covered auto**.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or
   b. is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

1 Owned by you.
2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.
3. Owned by:

   a. The United States of America;
   b. Canada;
   c. a state; or
   d. an agency, other than a political subdivision of a., b. or c. above.

4. Operated on rails or crawler treads.
5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **property damage** or **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our written consent.

2. While **occupying your covered auto** while it is being used as a public livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

   This Exclusion A.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For the first $100 of the amount of **property damage** to the property of each **insured** as the result of any one accident.

5. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you or any **family member**.

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While occupying, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

However, this exclusion does not apply to you or any **family member.**

B. We do not provide Uninsured Motorists Coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

   a.  workers' compensation law; or

   b.  disability benefits law.

## LIMIT OF LIABILITY

The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages to all property resulting from any one accident. This is the most we will pay for **bodily injury and property damage** regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The limit of liability otherwise applicable under this coverage shall be reduced by all sums

1. Paid because of the **bodily injury or property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A;

2. Paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

No payment will be made for loss paid or payable to the **insured** under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

## OTHER INSURANCE

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for injuries to an **insured** caused by an **uninsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each such policy.

In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgement by the injured party shall not preclude us from pursuing our rights to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

B. If we made a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 37 of 135

## ARBITRATION

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle**; or

2. As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

The following procedures will be used:

1. Each party will select a competent arbitrator. The two so selected will select a third.

2. If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3. Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4. Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5. Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

6. Judgment upon award may be entered in any proper court.

7. As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

## PART C2 - COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and

2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

We will also pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**. We will pay for these damages only after the limits of liability under any applicable liability bonds or policies have been exhausted by payments of judgments or settlements, unless we:

1. Have been given written notice in advance of settlement between an **insured** and the owner or operator of the **underinsured motor vehicle**; and

2. Consent to advance payment to the **insured** in the amount equal to the tentative settlement.

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the underinsured motorist.

**Insured** as used in this Part means:

1. **You** or any **family member.**

2. Any other person occupying:

   a. **your covered auto;** or
   b. any other auto operated by you.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

**Property damage** as used in this Part means injury to or destruction of:

1. **Your covered auto.**

2. Any property owned by a person listed in 1. or 2. of, **insured.**

**Underinsured motor vehicle** means a land motor vehicle or trailer of any type:

1. The ownership, maintenance or use of which is insured or bonded for liability at the time of the accident; and

*400A0CA30681655032065016164*

2. The sum of the limits of liability under all **bodily injury** liability bonds and insurance policies applicable at the time of the accident is:
   a. is less than the limit of liability for this coverage; or
   b. the total limit of liability available has been reduced to less than the limit of liability for this coverage by payment of damages to others persons.

However, **underinsured motor vehicle** does not include any vehicle or equipment:

1. Operated on rails or crawler treads.
2. Which is a farm-type tractor or other vehicle designed for use principally off public roads and while not upon public roads.
3. While located for use as a residence or premises.
4. Which is an **uninsured motor vehicle**.
5. Which is insured under Liability Coverage of this policy if such policy's limit of liability for Combined Uninsured/Underinsured Motorist Coverage is equal to or less than its limit of liability for Liability Coverage.

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which neither:
   a. a liability bond or policy; nor
   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;
   applies at the time of the accident.
2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.
3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. you or any **family member**,
   b. a vehicle which you or any **family member** are **occupying**; or
   c. **your covered auto**.
4. To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:
   a. denies coverage; or
   b. is or becomes insolvent.

However, **uninsured motor vehicle** does not include any vehicle or equipment.

1. Owned by you.
2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.
3. Owned by:
   a. The United States of America;
   b. Canada;
   c. a state; or
   d. an agency, other than a political subdivision of a., b. or c. above.
4. Operated on rails or crawler treads.
5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide coverage for **property damage** or **bodily injury** caused by an **uninsured motor vehicle** and sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our written consent.
2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.
3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

This Exclusion A.3. does not apply to a **family member** using **your covered auto** which is owned by you.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 39 of 135

4. For the first $100 of the amount of **property damage** to the property of each **insured** as the result of any one accident.

5. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you or any **family member**.

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

However, this exclusion does not apply to you or any **family member**.

B. We do not provide coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. We do not provide coverage for **bodily injury** caused by an **underinsured motor vehicle** and sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim without our consent. However, this exclusion does not apply if we:
   a. have been given written notice in advance of a settlement between an **insured** and the owner or operator of the **underinsured motor vehicle**; and
   b. we fail to advance payment to the **insured** in an amount equal to the tentative settlement within thirty days following receipt of such written notice.

2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without reasonable belief that that **insured** is entitled to do so.

This Exclusion C.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For any punitive or exemplary damages, or legal costs related thereto.

5. While **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

However, this exclusion does not apply to you or any **family member**.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

1. workers' compensation law; or
2. disability benefits law.

**LIMIT OF LIABILITY**

The limit of bodily injury liability shown in the Declarations for each person for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Combined Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **property damage** caused by an **uninsured motor vehicle** and resulting from any one accident.

This is the most we will pay for **bodily injury** and **property damage** regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

The limits of bodily injury liability shown in the Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A;

2. Paid because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to extent that an employer's lien is required to be paid under North Carolinas workers' compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an insured under this coverage is the lesser of:

    a.  the limit of bodily injury liability shown in the Declarations for each person for this coverage reduced by all sums described in items 1., 2. and 3. of the preceding paragraph, or

    b.  the damages sustained by the **insured** for **bodily injury** reduced by all sums described in items 1.,2. and 3. in the preceding paragraph.

The limit of property damages liability under this coverage shall be reduced by all sums paid because of the **property damages** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

No payment will be made for loss paid or payable to the **insured** under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

**OUR RIGHT TO RECOVER PAYMENT**

A.  If we made a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgment by the insured party shall not preclude us from pursuing our right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

    1.  Whatever is necessary to enable us to exercise our rights; and

    2.  Nothing after loss to prejudice them.

       However, our rights under this paragraph do not apply against the owner or operator of an **underinsured motor vehicle** if we have been given written notice in advance of a settlement and fail to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice.

B  If we made a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

    1  Hold in trust for us the proceeds of the recovery; and

    2.  Reimburse us to the extent of our payment.

**OTHER INSURANCE**

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for all injuries to an **insured** caused by an **uninsured motor vehicle** or **underinsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each policy.

In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**ARBITRATION**

If we and an **insured** do not agree:

1.  Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2.  As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

The following procedures will be used:

1.  Each party will select a competent arbitrator. The two so selected will select a third.

2.  If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3.  Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4.  Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5.  Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 41 of 135

6. Judgment upon award may be entered in any proper court.
7. As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment. Direct and accidental loss does not include any reduction in the value of any vehicle after it has been repaired, as compared to its value before it was damaged.

We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

Our payment will be reduced by any deductible shown in the Declarations. The deductible will not apply to a loss caused by:

1. fire or lightning;
2. smoke due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the auto is stored;
3. the stranding, sinking, burning, **collision** or derailment of any conveyance in or on which the auto is being transported;

"**Collision**" means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object.

Loss caused by the following is considered other than **collision**:

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water, or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal, or
10. Breakage of glass.

If loss is caused by contact with a bird or animal, or if breakage of glass is caused by **collision**, you may elect to have either loss considered to be caused by **collision**.

"**Non-owned auto**" means:

1. Any private passenger auto, station wagon type, pickup truck, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**.

2. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

We will also pay for direct and accidental loss caused by fire or lightning to clothes or other personal effects:

1. which are owned by you or any **family member**; and

2. which are in or on **your covered auto**.

"**Permanently installed**" means installed by bolts, brackets, or welding in a location in accordance with application laws and regulation for the installation of such equipment or device.

**TRANSPORTATION EXPENSES**

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of **your covered auto**. This applies only if the Declarations indicate that Other Than Collision is provided for that auto.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 42 of 135

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a **non-owned auto**. This applies only if the Declarations indicate that Other Than Collision is provided for any **your covered auto**.

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

**SALVAGE CHARGES**

In addition, we will pay general average and salvage charges that you or any **family member** are legally responsible for in transporting an auto.

**EXCLUSIONS**

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while they are being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Damage due and confined to:

    a. wear and tear;
    b. freezing;
    c. mechanical or electrical breakdown or failure; or
    d. road damage to tires.

    This exclusion does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.

3. Loss due to or as a consequence of:

    a. radioactive contamination;
    b. war (declared or undeclared);
    c. civil war;
    d. insurrection; or
    e. rebellion or revolution.

4. Loss to:

    a. any electronic equipment or device that records, emits, amplifies, receives or transmits audio, visual, or data signals, including but not limited to:

        (1) radios and stereos;
        (2) tape decks;
        (3) compact disc players or recorders;
        (4) citizens band radios;
        (5) telephones;
        (6) two-way mobile radios;
        (7) scanning monitor receivers;
        (8) television monitor receivers;
        (9) video cassette players or recorders;
        (10) audio cassette players or recorders;
        (11) personal computers; or
        (12) digital video disc player or recorder.

    b. tapes, records, discs, or other media used with any equipment or device described in a.

    c. any accessories used with equipment described in a.

    Exclusions 4.a. and 4.c. do not apply to:

    a. any equipment or device that is **permanently installed** by the vehicle's manufacturer; or

    b. the first $1,000 of any equipment or device that is **permanently installed** by other than the vehicle's manufacturer;

    in any **your covered auto** or a non-owed auto.

5. Loss to a camper body or **trailer** you own which is not shown in the Declarations. This exclusion (5.) does not apply to a camper body or trailer you:

    a. acquire during the policy period; and

    b. ask us to insure within the policy period or within 30 days after you become the owner.

6. Loss to any **non-owned auto** while used by you or any **family member** in the **business** of:

    a. selling;
    b. repairing;

c. servicing;
d. storing; or
e. parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery.

7. Loss to any **non-owned auto** if used without the express or implied permission of the owner or other person in lawful possession of such vehicle.

8. With respect to any **trailer** shown in the Declarations, loss to:
   a. awnings or cabanas; or
   b. equipment designed to create additional living facilities.

9. Loss to **your covered auto** or any **non-owned auto** due to forfeiture ordered by the courts or destruction or confiscation by governmental or civil authorities because you or any **family member**:
   a. engaged in illegal activities; or
   b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

   This exclusion does not apply to the interests of Loss Payees in **your covered auto**.

10. Loss to equipment designed or used detect or deter radar, laser or other speed monitoring equipment whether or not **permanently installed**.

11. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in Exclusion 6. This exclusion does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer**.

12. Loss to any custom furnishings or equipment in or upon any **your covered auto** or **non-owned auto**, including, but not limited to:
    a. special carpeting and insulation, furniture or bars;
    b. facilities for cooking and sleeping;
    c. height extending roofs or ladders;
    d. custom windows, murals, paintings or other decals or graphics;
    e. tool boxes and fifth wheel conversions;
    f. side exhausts and headers;
    g. winches and roll bars;
    h. special wheels/tires; or
    i. body or suspension alterations.

    However, this exclusion (12.):
    a. does not apply to the first $1,000 of any such custom furnishings or equipment; and
    b. does not apply to a camper body shown in the Declarations, or a cap, cover or bedliner in or upon any pickup truck you own.

13. Loss to, or loss of use of, a **non-owned auto** rented by:
    a. you; or
    b. any **family member**;

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

Our limit of liability will be the lesser of:

1. Actual cash value of the stolen or damaged property; or
2. Amount necessary to repair or replace the property with other property of like kind and quality.

This amount does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

Subject to the above, our limit of liability for loss to:

1. Personal effects is $100; and
2. A **trailer** not owned by you is $1,500.

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

**PAYMENT OF LOSS**

We may pay for the loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

*40040C430816350320630161617*

a. You; or
b. The address shown in the policy. If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value. [IN THE REPAIR OF YOUR COVERED AUTO UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF AUTOMOBILE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.]

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible insurance

## APPRAISAL

If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal

## LOSS PAYEE

If a Loss Payee is shown in the Declaration, then any Collision Coverage or Other Than Collision Coverage provided by this policy applies to the Loss Payee's interest in **your covered auto**. If Collision Coverage or Other Than Collision Coverage is cancelled or nonrenewed, we will provide coverage for the Loss Payee's interest until 10 days after the date we mail or electronically transmit a notice of the cancellation or nonrenewal to the Loss Payee. Any coverage for the Loss Payee's interest shall terminate on the earlier of the expiration of this 10 period or the effective date of the Loss Payee's interest issued by another insurance carrier. Except for any continuation of coverage for the Loss Payee's interest that may be provided under this paragraph in connection with the Loss Payee's right to notice of cancellation or nonrenewal, this coverage for the Loss Payee's interest is only provided for a loss that would otherwise be payable to you.

Notwithstanding any other provisions of this policy, including but not limited to any continuation of coverage for Loss Payee's interest as set forth above, if Collision coverage or Other Than Collision Coverage is rescinded, the Loss Payee's interest will not be protected and the Loss Payee shall have no rights greater than your rights to recover for a loss. If we pay you or the Loss Payee, then we are entitled to your and the Loss Payee's right of recovery to the extent of our payment. Our rights of recovery does not impair the Loss Payee's right to recover the full amount of its claim from you.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS - FILING A CLAIM

## GENERAL DUTIES

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit as often as we reasonably require:
    a. to physical exams by physicians we select. We will pay for these exams.
    b. to examinations under oath and subscribe the same.

4. Authorize us to obtain:
    a. medical reports; and
    b. other pertinent records.

5. Submit a proof of loss when required by us.

## ADDITIONAL DUTIES FOR UNINSURED AND COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE

A person seeking Uninsured or Combined Uninsured/Underinsured Motorists Coverage must also:

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 45 of 135

1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought. A suit may not be brought by an **insured** until 60 days after that person notifies us of their belief that the prospective defendant is an uninsured motorist.

Any person who intends to pursue recovery against the owner or operator of an **underinsured motor vehicle** for damages beyond those paid or payable under this policy shall give us:

1. Notice of such intent; and
2. The opportunity to participate, at our expense, in the prosecution of such claim.

## ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO

A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.

### PART F - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

## CHANGES

The premium for each of **your covered autos** is based on information we have received from you or other sources. You agree:

1. That if any of this information material to the development of the policy premium is incorrect, incomplete or changed, we may adjust the premium accordingly during the policy period.
2. To cooperate with us in determining if this information is correct and complete, and to advise us of any changes in this information.

Any adjustment of your premium will be made using the rules in effect at the time of the change.

Premium adjustment may be made as the result of a change in:

1. Autos insured by the policy, including changes in use.
2. Drivers.
3. Coverages or coverage limits.
4. Rating territory.
5. Eligibility for discounts or other premium credits.

We may revise your policy coverages to provide more protection without additional premium charge. If we do this and you have the coverage which is changed, your policy will automatically provide the additional coverage as of the date the revision is effective in North Carolina. Otherwise, this policy contains all of the coverage agreements between you and us. Its terms may not be changed or waived except by an endorsement issued by us.

## FRAUD OR MATERIAL MISREPRESENTATION

We do not provide coverage for any **insured**

1. who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy; or
2. if a named insured made a material misrepresentation in the application for this policy of insurance.

This provision applies to Part A - Liability Coverage to the extent that the limits of liability exceed the minimum limits required by the Financial Responsibility Law of North Carolina. If we make payment under Part A - Liability Coverage which we would not have otherwise made in the absence of the preceding sentence, then we shall have the right to recover such payment from any **insured** who made a fraudulent statement, engaged in fraudulent conduct, or made a material misrepresentation.

## LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the **insured** has an obligation to pay; or

Case 1:20-cv-00839 Document 1-1 Filed 09/11/20 Page 46 of 135

2. The amount of that obligation has been finally determined by judgment after trial.

No person or organization has any right under this policy to bring us into any action to determine the liability of an insured.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

    1. Whatever is necessary to enable us to exercise our rights; and

    2. Nothing after loss to prejudice them.

However, our rights under this paragraph do not apply to:

    1. Part B;

    2. Part C1 and C2, as those parts contain separate provisions which state our right to recover payments under those Parts.

    3. Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    1. Hold in trust for us the proceeds of the recovery; and

    2. Reimburse us to the extent of our payment.

However, our rights under this paragraph do not apply to Part B.

## POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses which occur

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## TERMINATION - CANCELLATION, NONRENEWAL, AUTOMATIC TERMINATION, OTHER TERMINATION PROVISIONS

**Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

    a. returning this policy to us; or

    b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages by mailing by first class mail to the named insured shown in the Declarations at the last known address:

    a. at least 15 days notice if cancellation is for non-payment of premium; or

    b. at least 60 days notice in all other cases.

3. We may cancel any coverage other than Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverage by mailing to the named insured shown in the Declarations at the last known address 10 days notice.

4. We will cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages only for the following reasons:

    a. Nonpayment of premiums.

    b. You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility on submission of new application.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 47 of 135

c.  The termination of our contract with the agent through whom this policy was written. This does not apply if we terminate the contract because of the quality of the agent's insureds.
d.  The cancellation of this policy pursuant to a power of attorney given to a company licensed pursuant to the provisions of G.S. 58-35-5.
e.  You fail, at time of renewal, to meet the requirements of our corporate charter, articles of incorporation or by-laws, if we are organized for the sole purpose of providing members with insurance policies in North Carolina.
f.  If you knowingly make a material misrepresentation of:

(1)  the years of driving experience; or
(2)  the driving record of

you or any other driver who lives with you and customarily uses **your covered auto.**

**Nonrenewal.** If we decide not to renew or continue the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages of this policy we will mail notice to the named insured shown in the Declarations at the last known address. Notice will be mailed at least 60 days before the end of the policy period. If we decide not to renew or continue any other coverage, we will mail the notice at least 10 days before the end of the policy period. We will refuse to renew or continue this policy only as permitted by the laws of North Carolina.

**Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on your **covered auto,** any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Terminations Provisions**

1   If the law in effect in North Carolina at the time this policy is issued, renewed or continued:

a.  requires a longer notice period;
b.  requires a special form of or procedure for giving notice; or
c.  modifies any of the stated termination reasons;

we will comply with those requirements.

2.  Proof of mailing of any notice shall be sufficient proof of notice.

3.  If the Named Insured or a premium finance company cancels this policy, the premium owned or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we cancel this policy, any premium owed or premium refund will be calculated on a pro-rata basis. However, making or offering to make the refund is not a condition of cancellation.

4.  The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1.  The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations;

2.  The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto;** and

3.  Any person having proper temporary custody of **your covered auto,** as an insured, until the appointment of a legal representative.

Coverage will only be provided until the end of the policy period.

**AUTO REPAIRS**

Well shall not recommend the use of a particular motor vehicle repair service without clearly informing the claimant that:

(i)   the claimant is under no obligation to use the recommended repair service;

(ii)  the claimant may use the repair service of the claimant's choice; and

(iii) the amount determined by us to be payable under the policy will be paid regardless of whether or not the claimant uses the recommended repair service.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 48 of 135

**Choice Law**

This policy is issued in accordance with laws of North Carolina and covers property or risks principally located in North Carolina. Any and all claims or disputes in any way related to this policy shall be governed by the laws of North Carolina

Copyright, North Carolina Rate Bureau, 2005

W.C.E. Robinson
Secretary

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO INDEMNITY COMPANY

O. M. Nicely
President

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 49 of 135

# GEICO

**GEICO INDEMNITY COMPANY**

Policy Number: 4308-61-63-50

Effective Date: 05-18-13

# AUTOMOBILE POLICY AMENDMENT

## NC 00 13 04 12

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement.

1. **Part A - LIABILITY COVERAGE**

   A. Part A is amended as follows:

      1. Exclusion A.2. is deleted and replaced by the following:

         We do not provide Liability Coverage for any **insured**:

         2. For **property damage** to property:

            a. owned in whole or in part by that **insured**; or
            b. being transported by that **insured**;

      2. The following Exclusion B.3. is added:

         We do not provide Liability Coverage for the ownership, maintenance or use of:

         3. Any vehicle while participating in any prearranged, organized, or spontaneous:

            a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or
            b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 3.a. above.

            This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

   B. The following provision is added following the **Other Insurance** provision:

      **Appraisal - Diminution in Value**

      If there is no dispute between the claimant and us regarding the **insured's** liability for the property damage to the claimant's vehicle, but:

      a. the claimant and we fail to agree as to the difference in fair market value of the vehicle immediately before the accident and immediately after the accident; and

      b. the difference in the claimant's and our estimate of the diminution in fair market value is greater than two thousand dollars ($2000) or twenty-five percent (25%) of the fair market retail value of the vehicle prior to the accident as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; then

      on the written demand of either the claimant or us, the dispute regarding the amount of the diminution in value shall be determined by appraisal in accordance with G.S. 20-279.21(d1).

2. **Part B - MEDICAL PAYMENTS COVERAGE**

   The following Exclusion 12. is added:

   We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

   12. Sustained while **occupying** any vehicle participating in any prearranged, organized, or spontaneous:

       a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or
       b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 12.a. above.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 50 of 135

3. **Part C1 - UNINSURED MOTORISTS COVERAGE**

   Part C1 is amended as follows:

   A. The third paragraph of **Limit of Liability** is deleted and replaced by the following:

   The limits of bodily injury liability shown in the [Schedule or] Declarations for each person and each accident for this coverage shall be reduced by all sums:

   1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

   2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

   The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

   1. the limit of bodily injury liability shown in the [Schedule or] Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

   2. the damages sustained by the **insured** for **bodily injury** reduced by:

      a. all sums described in items 1. and 2. in the preceding paragraph; and

      b. all sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

   The limit of property damage liability under this coverage shall be reduced by all sums paid because of the **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

   B. The first paragraph of **Arbitration** is deleted and replaced by the following:

   If we and an **insured** do not agree:

   1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle**, or

   2. As to the amount of such compensatory damages,

      then the **insured** may demand to settle these disputed issues by arbitration. If an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorist Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the law of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within (30) days after the filing of such lawsuit.

   C. Item 5. of Arbitration is deleted and the remaining paragraphs are renumbered appropriately.

4. **Part C2 - COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE**

   Part C2 is amended as follows:

   A. The fourth and fifth paragraphs of **Limit of Liability** are deleted and replaced by the following:

   The limits of bodily injury liability shown in the [Schedule or] Declarations for each person and each accident for this coverage shall be reduced by all sums:

   1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

   2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

   The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

   1. the limit of bodily injury liability shown in the [Schedule or] Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

   2. the damages sustained by the **insured** for **bodily injury** reduced by:

      a. all sums described in items 1. and 2. in the preceding paragraph; and

      b. all sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

B. The first paragraph of **Arbitration** is deleted and replaced by the following:

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2. As to the amount of such compensatory damages;

then the **insured** may demand to settle these disputed issues by arbitration.

For purposes of an:

1. Uninsured Motorist Coverage claim, if an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within thirty (30) days after the filing of such lawsuit.

2. Underinsured Motorists Coverage claims, if an **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if the **insured** gives us written demand for arbitration within (30) days after the later of:

   a. The date we advance payment to the **insured** in an amount equal to a tentative settlement between the **insured** and the owner or operator of the **underinsured motor vehicle**;

   b. The date any applicable liability bonds or policies have been exhausted by the payments of judgments or settlements; or

   c. The date the **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, provided that such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **underinsured motor vehicle** for the damages arising out of the accident.

C. Item 5. of **Arbitration** is deleted and the remaining paragraphs are renumbered appropriately.

5. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Part D is amended as follows:

A. Exclusion 9 is changed by deleting the following:

This exclusion does not apply to the interests of Loss Payees in **your covered auto.**

B. The following Exclusion 14 is added:

We will not pay for:

14. Loss to your **covered auto** or any **non-owned auto** while participating in any prearranged, organized, or spontaneous:

   a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

   b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 14.a. above.

6. **Part F - GENERAL PROVISIONS**

A. The following is added to paragraph 4 of the **Cancellation** provision.

   g. The named **insured** is no longer an eligible risk under G.S. 58-37-1.
   h. Any other reason permitted by the North Carolina General Statutes.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 52 of 135

B.  **Other Termination Provisions** is deleted and replaced by the following:

1   If the law in effect in North Carolina at the time this policy is issued, renewed or continued:

   a.   requires a longer notice period;

   b    requires a special form of or procedure for giving notice;

   c.   modifies any of the stated termination reasons or;

   d.   adds any additional termination reasons;

   we will comply with those requirements and this policy shall be deemed amended to include any such change in the law.

2.  Proof of mailing of any notice shall be sufficient proof of notice.

3.  If the named **insured** or a premium finance company cancels this policy, the premium owed or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we cancel this policy, any premium owed or premium refund will be calculated on a pro-rata basis. However, making or offering to make the refund is not a condition of cancellation.

4   The effective date of the cancellation stated in the notice shall become the end of the policy period.


IN WITNESS WHEREOF, the GEICO Indemnity Company has caused this amendment to be signed by the President and Secretary of the Company.


We affirm this amendment


W. C. E. Robinson
Secretary

O. M. Nicely
President

Copyright, North Carolina Rate Bureau, 2012

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 53 of 135

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals

## We'll get you back on the road fast!

The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience
- What others paid for new vehicle in your area so you don't overpay
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar or call 877-638-4126*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

# CCC ONE   **MARKET VALUATION REPORT**

*Prepared for GEICO*


REPORT SUMMARY

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 44% greater than average mileage of 167,300

## CLAIM INFORMATION

| | |
|---|---|
| Owner | McIver, Alicia |
| Loss Vehicle | 2002 Honda Accord Sedan EX Automatic ULEV w/Leather |
| Loss Incident Date | 07/14/2017 |
| Claim Reported | 08/08/2017 |

## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 85487135 |
| Claim Reference | GC6061443001029-01 |
| Adjuster | H703 |
| Appraiser | Thomas, Eric |
| Odometer | 240,312 |
| Last Updated | 08/08/2017 09:59 AM |

## VALUATION SUMMARY

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

| | |
|---|---|
| **Base Vehicle Value** | **$ 2,456.00** |
| Condition Adjustment | + $ 97.00 |
| **Adjusted Vehicle Value** | **$ 2,553.00** |
| Vehicular Tax (3%) | + $ 76.59 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 2,629.59** |
| Deductible | - $ 250.00 |
| **Total** | **$ 2,379.59** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

| | |
|---|---|
| Valuation Methodology | 2 |
| Vehicle Information | 3 |
| Vehicle Condition | 6 |
| Comparable Vehicles | 8 |
| Valuation Notes | 11 |
| Supplemental Information | 12 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# VALUATION METHODOLOGY

## How was the valuation determined?



**CLAIM INSPECTION**

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.



When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 56 of 135

 **CCC ONE  MARKET VALUATION REPORT**

Owner: Mciver, Alicia
Claim: 0589814430101029-01

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | WILMINGTON, NC 28405 |
| VIN | 1HGCG66832A050608 |
| Year | 2002 |
| Make | Honda |
| Model | Accord Sedan |
| Trim | EX |
| Body Style | Automatic ULEV w/Leather |
| Body Type | Sedan |
| Engine · | |
|    Cylinders | 4 |
|    Displacement | 2.3L |
|    Fuel Type | Gasoline |
|    Carburation | PGM-FI |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3097 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Odometer | 240,312 | - 1,045 |

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration.

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | 3 Collision Estimates | 05/17/2012 |
| Experian AutoCheck | No Title Problem Found | |
| National Highway Traffic Safety Administration | 1 Recall | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 57 of 135

 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

|  |  |
|---|---|
| Odometer | 240 312 |
| Transmission | Automatic Transmission |
|  | Overdrive |
| Power | Power Steering |
|  | Power Brakes |
|  | Power Windows |
|  | Power Locks |
|  | Power Mirrors |
|  | Power Driver Seat |
|  | Power Trunk/Gate Release |
| Decor/Convenience | Air Conditioning |
|  | Tilt Wheel |
|  | Cruise Control |
|  | Rear Defogger |
|  | Intermittent Wipers |
|  | Console/Storage |
|  | Keyless Entry |
|  | Wood Interior Trim |
| Seating | Bucket Seats |
|  | Reclining/Lounge Seats |
|  | Leather Seats |
| Radio | AM Radio |
|  | FM Radio |
|  | Stereo |
|  | Search/Seek |
|  | Cassette |
|  | Steering Wheel Touch Controls |
|  | CD Changer/Stacker |
| Wheels | Aluminum/Alloy Wheels |
| Roof | Electric Glass Roof |
| Safety/Brakes | Air Bag (Driver Only) |
|  | Passenger Air Bag |

To the left is the equipment of the loss
vehicle that GEICO provided to CCC

**Standard** This equipment is
included in the base configuration of
the vehicle at time of purchase

**Additional** Equipment that is not
Standard but was noted to be on the
loss vehicle

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 58 of 135

 VEHICLE INFORMATION

### VEHICLE EQUIPMENT

|  |  |
|---|---|
|  | Anti-lock Brakes (4) |
|  | 4-wheel Disc Brakes |
|  | Front Side Impact Air Bags |
|  | Alarm |
| Exterior/Paint/Glass | Dual Mirrors |
|  | Body Side Moldings |
|  | Clearcoat Paint |

© Copyright 2016 CCC Information Services Inc All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 59 of 135

# 🚐 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE PRIVATE | **Notes:** SIGNIFCANT SOIL/GREASE PRESENT, SIGNS OF ADV CORROSION ON ENG MANIFOLD, BATTERY TERMINALS<br>**Guideline:**<br>**Transmission:** Fluid slightly discolored. A few areas of seepage.<br>**Engine:** Few small leaks. Belts and hoses firm, show minimal wear. Significant dirt and grease in engine compartment. | $ 0 |
| Tires | AVERAGE PRIVATE | **Notes:** RT FRT 7, RT REAR 3, LT REAR 7, LT FRT 5<br>**Guideline:**<br>**Rear Tires:** 41% to 68% of new Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11)<br>**Front Tires:** 41% to 68% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) | $ 0 |
| Paint | AVERAGE PRIVATE | **Notes:** PNT PEELING ON REAR BUMPER, ROCK CHIPS ON HOOD W/ ADV CORROSION, PNT PEELING FRT BUMPER, PAINT FADING RT FENDER,<br>**Guideline:**<br>Few small deep chips and/or scratches. No significant peeling and/or flaking. Minor swirl marks. Slight Fading. | $ 0 |
| Body | AVERAGE PRIVATE | **Notes:** DENT RT FRT DOOR, RUST ON HOOD, FRT & REAR BUMPERS NLT FULLY ALIGNED<br>**Guideline:**<br>**Sheet Metal:** Few dents and/or numerous dings. No significant surface rust.<br>**Trim:** Minimal damage to components. Few dents and/or numerous dings. | $ 0 |

GEICO uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 60 of 135

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Glass | DEALER RETAIL | **Notes:** LIGHT SURFACE SCRATCHES, SMALL PITTING, NO MAJOR CHIPS OR CRACKS <br> **Guideline:** <br> Light surface scratches and/or pitting. | $ 32 |
| Seats | AVERAGE PRIVATE | **Notes:** SEATS LIGHT SOILED/FADED/ DISCOLORED LEATHER, DARK SCUFF REAR RIGHT SIDE SEAT <br> **Guideline:** <br> Lightly soiled, faded and/or discolored. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Carpets | AVERAGE PRIVATE | **Notes:** CARPETS ARE LIGHTLY SOILED WITH BLACK DIRT, CRACKS IN CENTER CONSOLE. HOLES OR BURNS, LT FRT DOOR TRIM HAS CRACKS <br> **Guideline:** <br> Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | DEALER RETAIL | **Notes:** FEW SMALL SCRATCHS/ SCUFFS ON DASHBOARD, NO SIGNIFICANT WEAR SHOWN, NO COMPONENTS DAMAGED OR CRACKED <br> **Guideline:** <br> Few small scratches and/or gouges. Minimal damage to components. Light wear. | $ 65 |
| Headliner | AVERAGE PRIVATE | **Notes:** LIGHT SCUFFING, MODERATE SOIL THROUGHOUT <br> **Guideline:** <br> Few small holes and/or burn marks. Lightly scuffed. | $ 0 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 61 of 135

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 240,312 | 248,479 | 200,071 | 212,851 |
| Automatic Transmission | | | | |
| Overdrive | | | | |
| Power Steering | | | | |
| Power Brakes | | | | |
| Power Windows | | | | |
| Power Locks | | | | |
| Power Mirrors | | | | |
| Power Driver Seat | | | | x |
| Power Trunk/Gate Release | | | | |
| Air Conditioning | | | | |
| Tilt Wheel | | | | |
| Cruise Control | | | | |
| Rear Defogger | | | | |
| Intermittent Wipers | | | | |
| Console/Storage | | | | |
| Overhead Console | x | | x | x |
| Keyless Entry | | | | |
| Wood Interior Trim | | | | x |
| Cloth Seats | x | x | x | |
| Bucket Seats | | | | |
| Reclining/Lounge Seats | | | | |
| Leather Seats | | | | x |
| AM Radio | | | | |
| FM Radio | | | | |
| Stereo | | | | |
| Search/Seek | | | | |
| CD Player | x | | x | x |
| Cassette | | | | |
| Steering Wheel Touch Controls | | | | x |
| CD Changer/Stacker | | | | |
| Aluminum/Alloy Wheels | | | | |
| Electric Glass Roof | | | | |
| Drivers Side Air Bag | | | | |
| Passenger Air Bag | | | | |
| Anti-lock Brakes (4) | | | | |
| 4-wheel Disc Brakes | | | | |
| Front Side Impact Air Bags | | | | |
| Alarm | | | | |
| Dual Mirrors | | | | |

Updated Date 07/17/2017
2002 Honda Accord Sedan Ex
Automatic W/leather 4 2.3l Gasoline
Pgm-fi
VIN 1HGCG566X2A088966
Dealership Autoworld Of Conway
Telephone (843) 389 2279
Source Autotrader
Stock # 088966
Distance from Wilmington, NC
70 Miles   Conway, SC

Updated Date 05/24/2017
2002 Honda Accord Sedan Ex
Automatic W/leather 4 2.3l Gasoline
Pgm-fi
VIN 1HGCG5692A113011
Dealership Pleasure Ride Auto
Telephone (252) 756 2595
Source Autotrader
Stock # 13011
Distance from Wilmington, NC
97 Miles   Greenville, NC

Updated Date 07/12/2017
2002 Honda Accord Sedan Ex
Automatic 4 2.3l Gasoline Pgm-fi
VIN 1HGCG566X2A016125
Dealership Little M Car Sales
Telephone (919) 755-9660
Source Autotrader
Stock # 0861
Distance from Wilmington, NC
109 Miles   Raleigh NC

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

The Condition Adjustment sets that comparable vehicle to Average Private

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 62 of 135


COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 | |
|---------|-------------|--------|--------|--------|--|
| | | | | | condition which the loss vehicle is also compared to in the Vehicle Condition section. |
| Body Side Moldings | | | | | |
| Clearcoat Paint | | ✗ | ✗ | ✗ | |
| **List Price** | | $ 2,500 | $ 2,900 | $ 3,200 | |
| **Adjustments:** | | | | | |
| Make/Model Trim | | | | + $ 272 | |
| Options | | + $ 57 | | | |
| Mileage | | + $ 37 | - $ 346 | - $ 196 | |
| Condition¹ | | - $ 536 | - $ 596 | - $ 556 | |

{

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 63 of 135

 COMPARABLE VEHICLES

### ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4** | | | |
| Source: Dealer Ad Prestige Economy Cars, In Durham, NC (919) 220-1966 129 Miles From Wilmington, NC | 2002 Honda Accord Sedan Ex Manual 4 2.3l Gasoline Pgm-fi Odometer: 173,521 Stock #: 051992 Updated Date: 07/22/2017 | $ 3,400 {List} | $ 2,455 |
| **Comp 5** | | | |
| Source: Autotrader Thad Mitsubishi Graham NC (336) 252-4875 149 Miles From Wilmington, NC | 2002 Honda Accord Sedan Ex Automatic Ulev 4 2.3l Gasoline Pgm-fi Odometer: 220,551 VIN: 1HGCG66882A172655 Stock #: 172655 Updated Date: 06/19/2017 | $ 3,991 {List} | $ 3,415 |

Additional Comparable Vehicles are in summary format, but are adjusted the same as those on the previous page.

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle

Distance is based upon a straight line between loss and comparable vehicle locations

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 64 of 135


# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GEICO, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include North Carolina Administrative Code Section 11-04 0418

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 65 of 135

# SUPPLEMENTAL INFORMATION

## 📞 CARRIER INFORMATION

**Prepared for:**    GEICO

**Web:**        Get back on the road fast!
GEICO offers an easy-to-use service designed to help you save time and money
Simply visit www.geico.com/replaceyourcar today or call
(877)-638-4119 to get started!!

##  VEHICLE HISTORY INFORMATION

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### Collision History Information:

COLLISION INCIDENT REPORTED BY GEICO ON 05/17/2012

Claim #: 0283774670101029-01 in MATTHEWS, NC

Repair Estimate: 589.99                    Miles: 162451

| Damage Location: | RIGHT FRONT PILLAR (RIGHT SIDE) |
| | RIGHT QUARTER POST (RIGHT SIDE) |

COLLISION INCIDENT REPORTED BY USAA ON 08/03/2006

Claim #: 015609164000000008001 in JACKSONVILLE, NC

Repair Estimate: 1913.84                    Miles: 071136

| Damage Location: | REAR |
| | UNKNOWN |

COLLISION INCIDENT REPORTED BY CSAA INSURANCE GROUP ON 04/16/2004

Claim #: 0073251376500200101 in NORTH ARLINGTON, NJ

Repair Estimate: 407.25                    Miles: 000000

| Damage Location: | REAR |
| | UNKNOWN |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 66 of 135


 ## EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | No Abandoned Record Found |
| Damaged | No Damaged Record Found |
| Fire Damage | No Fire Damage Record Found |
| Grey Market | No Grey Market Record Found |
| Hail Damage | No Hail Damage Record Found |
| Insurance Loss | No Insurance Loss Record Found |
| Junk | No Junk Record Found |
| Rebuilt | No Rebuilt Record Found |
| Salvage | No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | No Frame Damage Record Found |
| Major Damage Incident | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | No Odometer Problem Record Found |
| Recycled | No Recycled Record Found |
| Water Damage | No Water Damage Record Found |
| Salvage Auction | No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | Accident Record Found |
| Corrected Title | No Corrected Title Record Found |
| Driver Education | No Driver Education Record Found |
| Fire Damage Incident | No Fire Damage Incident Record Found |
| Lease | No Lease Record Found |
| Lien | No Lien Record Found |
| Livery Use | No Livery Use Record Found |
| Government Use | No Government Use Record Found |
| Police Use | No Police Use Record Found |
| Fleet | No Fleet Record Found |
| Rental | No Rental Record Found |
| Fleet and/or Rental | No Fleet and/or Rental Record Found |
| Repossessed | No Repossessed Record Found |
| Taxi use | No Taxi use Record Found |
| Theft | Theft Record Found |
| Fleet and/or Lease | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | No Emissions Safety Inspection Record Found |
| Duplicate Title | No Duplicate Title Record Found |

[illegible] provides [illegible] information reported by Experian regarding the 2002 Honda Accord Sedan (1HGCG56632A050569) This data is provided for informational purposes. [illegible]

LEGEND

[illegible]

TITLE CHECK

[illegible] damage or warnings associated with the [illegible]

EVENT CHECK

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems [illegible] car damage, theft or other significant problems.

VEHICLE INFORMATION

AutoCheck [illegible] additional information on this vehicle. These records will provide more history for this loss vehicle.

ODOMETER CHECK

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering or possible odometer breakage.

© Copyright 2018 CCC Information Services Inc. All Rights Reserved

# CCC ☰ONE  MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

## 📖 FULL HISTORY REPORT RUN DATE: 08/08/2017

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 02/11/2002 | NJ | 10 | Motor Vehicle Dept. | TITLE (Lease Reported) |
| 02/28/2002 | NJ | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/28/2003 | NJ | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/28/2004 | NJ | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/13/2004 | HILLSIDE, NJ | | State Agency | REAR IMPACT WITH ANOTHER VEHICLE |
| 11/09/2004 | HILLSIDE, NJ | 44078 | Motor Vehicle Dept | TITLE |
| 11/17/2004 | BROOKLYN, NY | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 01/26/2005 | NY | | Motor Vehicle Dept | TITLE (Lien Reported) |
| 08/08/2005 | NY | | Motor Vehicle Dept | THEFT |
| 11/23/2005 | JACKSONVILLE, NC | 54507 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 11/23/2005 | JACKSONVILLE, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/07/2006 | KINSTON, NC | 73729 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 12/15/2006 | JACKSONVILLE, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/16/2007 | LELAND, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/29/2007 | WILMINGTON, NC | 79670 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 06/19/2007 | LELAND, NC | 79660 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 05/19/2008 | LELAND, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/16/2008 | LELAND, NC | 95845 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 05/08/2009 | LELAND, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/10/2009 | LELAND, NC | 110168 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 06/15/2010 | LELAND, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/15/2010 | MATTHEWS, NC | 130315 | Independent Emission Source | PASSED EMISSION INSPECTION |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 06/20/2011 | MATTHEWS, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 06/20/2011 | MATTHEWS, NC | 147091 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 06/18/2012 | MATTHEWS, NC | 163529 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 06/18/2012 | MATTHEWS, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/30/2012 | CASTLE HAYNE, NC | 186592 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 09/28/2012 | WILMINGTON, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/22/2013 | WILMINGTON, NC | | Motor Vehicle Dept | TITLE (Lien Reported) |
| 01/09/2014 | WILMINGTON NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 09/26/2014 | WILMINGTON, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 09/29/2015 | WILMINGTON, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 09/29/2016 | HAMPSTEAD, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |

AUTOCHECK TERMS AND CONDITIONS:

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles, therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS INACCURACIES OR OMISSIONS  THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS. AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED  INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond  the reasonable control of Experian, including, without limitation  "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to  he personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois

# CCC☰ONE  MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

### 🛞 NHTSA VEHICLE RECALL

The National Highway Traffic Safety
Administration has issued 1 safety related
recall notices that may apply to the above
valued vehicle

**NHTSA Campaign ID : 15V320000**

**Mfg's Report Date : MAY 28, 2015**

**Component : AIR BAGS**

**Potential Number Of Units Affected : 6,281,043**

**Summary :** Honda (American Honda Motor Co.) is recalling certain model year 2001-2007 Accord, 2001-2005 Civic, 2001-2004 Honda Civic GX, 2003-2005 Honda Civic Hybrid, 2002-2006 CR-V, 2003-2011 Element, 2002-2004 Odyssey, 2003-2008 Pilot, 2006 Ridgeline, 2003 Acura 3.2CL, 2003-2006 Acura MDX, and 2002-2003 Acura 3.2TL vehicles. The affected vehicles are equipped with a dual-stage driver frontal air bag that may be susceptible to moisture intrusion and other factors, including manufacturing variability that, over time, could cause the inflator to rupture.

**Consequence :** In the event of a crash necessitating deployment of the driver's frontal air bag, the inflator could rupture with metal fragments striking the driver or other occupants resulting in serious injury or death.

**Remedy :** Honda will notify owners, and dealers will replace the driver frontal air bag inflator, free of charge. The recall began on July 1, 2015. Owners may contact Honda customer service at 1-888-234-2138. Owners may contact Acura customer service at 1-800-382-2238, select option 4. Note: Vehicles that have had their driver frontal air bag replaced previously as part of a recall remedy prior to September 12, 2014 need to have their air bag replaced under this recall as well. Vehicles that, on or after September 12, 2014, received a remedy for a prior driver frontal air bag inflator recall already received an inflator of a different design, and therefore are not included in this recall and do not require additional servicing. Note: This recall fully supersedes recalls 08V-593, 09V-259, 10V-041, 11V-260, 14V-351 and 15V-153.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

 **GEICO.**
geico.com

**Government Employees Insurance Company**

Attn: Salvage Department. PO BOX 13528
Macon, GA 31208-3528



EXHIBIT
C

8/9/2017

Ms. Alicia Mciver

Dear Ms. Mciver,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 910-547-2483. You can also access your claim information at GEICO.com.

Sincerely,

Eric Thomas
910-547-2483

Encl:    SHCL30

EC0977 (12/2014)

## TOTAL LOSS SETTLEMENT EXPLANATION

Date: August 9, 2017
Accident Date: July 14, 2017
Claim Number: 058961443-0101-029
Company: Government Employees Insurance Company
Vehicle: 2002 HONDA Accord Sedan EX Automatic ULEV w/Leather
VIN: 1HGCG66832A050608

Dear: Alicia Mciver,

This is a brief explanation of your claim settlement:

| | |
|---|---|
| Base Value | $2,456.00 |
| Condition Adjustment | $97.00 |
| Pre Tax Adjustment | $0.00 |
| Tax | $76.59 |
| Total Value | $2,629.59 |
| State and Local Regulatory Fees | $0.00 |
| Post Tax Adjustment | $-76.59 |
| Less Deductible | $250.00 |
| Less Percent Negligent       0% | $0.00 |
| Less Retention Amount | $465.98 |
| Net Settlement Amount | $1,837.02 |
| Towing Charges | $0.00 |
| Storage Charges | $0.00 |

State law requires that owners of total loss or salvage motor vehicles apply for a salvage certificate within 10 days after a total loss settlement.

Does Apply ☐           Does Not Apply ■

Any state sales tax due the owner through replacement of the vehicle will be considered when notice is given and purchase invoice presented.

Does Apply ☐           Does Not Apply ■

Adjuster Eric Thomas           Telephone No.  910-547-2483

Customer's Signature  _____

CL-30 (10-13)

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals

## We'll get you back on the road fast!

The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online
- TrueCar® representatives available to help you through the entire process

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar or call 877-638-4126*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives. This no obligation program is administered by TrueCar, Inc.

# CCC ONE — MARKET VALUATION REPORT

*Prepared for GEICO*

REPORT SUMMARY 

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Pierce, Natasha |
| Loss Vehicle | 1999 Honda Accord Sedan LX Automatic |
| Loss Incident Date | 07/19/2018 |
| Claim Reported | 07/25/2018 |

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 47% greater than average mileage of 184,600

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 89425020 |
| Claim Reference | 0474653040107049-01 |
| Adjuster | Seaman, Jonathan |
| Odometer | 270,770 |
| Last Updated | 07/25/2018 11:49 AM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 1,442.00** |
| Condition Adjustment | - $ 209.00 |
| **Adjusted Vehicle Value** | **$ 1,233.00** |
| Vehicular Tax (3%) | + $ 36.99 |

Tax reflects applicable state, county and municipal taxes.

# Total          $ 1,269.99

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

This is derived per our valuation methodology shown later on the next page.

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

table

| | |
|---|---|
| Valuation Methodology | 2 |
| Vehicle Information | 4 |
| Vehicle Condition | 5 |
| Comparable Vehicles | 8 |
| Valuation Notes | 9 |
| Supplemental Information | 10 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# VALUATION METHODOLOGY

### How was the valuation determined?



**CLAIM INSPECTION**

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U S This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties All of these sources are updated regularly.



**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 76 of 135

#  VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | GREENSBORO, NC 27415 |
| VIN | 1HGCG5641XA141424 |
| Year | 1999 |
| Make | Honda |
| Model | Accord Sedan |
| Trim | LX |
| Body Style | Automatic |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 4 |
| Displacement | 2.3L |
| Fuel Type | Gasoline |
| Carburation | PGM-Fi |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 2957 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Odometer | 270,770 | - 756 |

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | Title Check |
| Insurance Services Organization/ National Insurance Crime Bureau | 8 Records Found |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | To the left is the equipment of the loss vehicle that GEICO provided to CCC |
|---|---|---|
| Odometer | 270,770 | |
| Transmission | Automatic Transmission | Standard: This equipment is included in the base configuration of the vehicle at time of purchase |
| | Overdrive | |
| Driver Convenience | Power Windows | Additional Equipment that is not Standard but was noted to be on the loss vehicle |
| | Power Locks | |
| | Power Mirrors | |
| | Power Trunk/Gate Release | |
| | Cruise Control | |
| | Intermittent Wipers | |
| | Tilt Wheel | |
| | Console/Storage | |
| Instrument Panel | Air Conditioning | |
| | Rear Defogger | |
| Radio | AM Radio | |
| | FM Radio | |
| | Stereo | |
| | Search/Seek | |
| | Cassette | |
| Safety | Air Bag (Driver Only) | |
| | Passenger Air Bag | |
| Paint | Clearcoat Paint | |
| Front End | Power Steering | |
| | Power Brakes | |
| Glass And Mirrors | Dual Mirrors | |
| Seats | Cloth Seats | |
| | Bucket Seats | |
| | Reclining/Lounge Seats | |
| Decor | Body Side Moldings | |
| Wheels | 4-wheel Disc Brakes | |
| | Wheel Covers | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 78 of 135

 # VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE PRIVATE | Notes: BELTS AND HOSES FIRM, ENGINE BAY SOILED<br>**Guideline:**<br>**Transmission:** Fluid slightly discolored. A few areas of seepage.<br>**Engine:** Few small leaks. Belts and hoses firm, show minimal wear. Significant dirt and grease in engine compartment. | $ 0 |
| Tires | DEALER RETAIL | Notes: Passenger Tires: RF-8/32, LF-9/32, RR-9/32; LR-9/32. % of Tread Wear-0.72. Condition Rating-Dealer Retail<br>**Guideline:**<br>**Rear Tires:** 69% to 90% of new<br>Example: Typical new car tires are 11/32, loss measures at 8/32 = 73% (8/11)<br>**Front Tires:** 69% to 90% of new<br>Example: Typical new car tires are 11/32, loss measures at 8/32 = 73% (8/11) | $ 15 |
| Paint | ROUGH | Notes: CLEAR COAT CHIPPING HOOD, CLEAR COAT CHIPPING LEFT FENDER, CLEAR COAT CHIPPING LF DOOR, CHIPPING CLEAR LR DOOR, CHIPPING CLEAR LEFT QTR, CHIPPING CLEAR REAR BUMPER, CHIPPING CLEAR DECK LID, CHIPPIING CLEAR RT QTR, CHIPPING CLEAR RR DOOR, CHIPPING CLEAR FR DOOR, CHIPPING CLEAR RT FENDER.<br>**Guideline:**<br>Numerous large deep chips and/or scratches. Heavy peeling, flaking, fading and/or mismatched panels. Significant fading. | – $ 66 |

GEICO uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected. Based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 79 of 135


# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

|  | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Body | ROUGH | **Notes:** SCRATCHES REAR BUMPER, SCRATCHES FT BUMPER, DINGS FR DOOR, SCRATCHES LEFT QTR, SCRATCHES RT QTR, SURFACE RUST FR DOOR. **Guideline: Sheet Metal:** Numerous dents and dings. Areas of rust with holes. Misaligned or missing panels. **Trim:** Components broken and/or missing. Numerous dents and dings. Misaligned components. | - $ 153 |
| Glass | DEALER RETAIL | **Notes:** LIGHT SURFACE SCRATCHES **Guideline:** Light surface scratches and/or pitting. | $ 22 |
| Seats | AVERAGE PRIVATE | **Notes:** FADED DRIVER SEAT, FADED PASSENGER SEAT, FADED REAR SEATS **Guideline:** Lightly soiled, faded and/or discolored. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Carpets | AVERAGE PRIVATE | **Notes:** WEAR AT PEDALS, SOILED DRIVER SIDE, SOILED PASSENGER SIDE, SOILED REAR PASSENGER **Guideline:** Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | ROUGH | **Notes:** BROKEN OVERHEAD CONSOLE, HEAVY WEAR CENTER CONSOLE, WORN STEERING WHEEL CONTROLS, WEAR DRIVER DOOR TRIM, WEAR PASSENGER DOOR TRIM. **Guideline:** Numerous large scratches and/or gouges. Components broken, cracked and/or missing. Heavy wear. | - $ 28 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



# CCC ONE MARKET VALUATION REPORT

## VEHICLE CONDITION

### COMPONENT CONDITION

|  | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Headliner | AVERAGE PRIVATE | **Notes:** SOILED DRIVER SIDE FT. **Guideline:** Few small holes and/or burn marks. Lightly scuffed. | $0 |

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 81 of 135

Owner: Pierce, Natasha
Claim: 0474653040107049-01

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Odometer | 270,770 | 279,400 | 180,000 |
| Automatic Transmission | | | ✗ |
| 5 Speed Transmission | ✗ | ✗ | |
| Overdrive | | | |
| Power Windows | | | |
| Power Locks | | | |
| Power Mirrors | | | |
| Power Trunk/Gate Release | | | |
| Cruise Control | | | |
| Intermittent Wipers | | | |
| Tilt Wheel | | | |
| Console/Storage | | | |
| Air Conditioning | | | |
| Rear Defogger | | | |
| AM Radio | | | |
| FM Radio | | | |
| Stereo | | | |
| Search/Seek | | | |
| Cassette | | | |
| Drivers Side Air Bag | | | |
| Passenger Air Bag | | | |
| Clearcoat Paint | | ✗ | ✗ |
| Power Steering | | | |
| Power Brakes | | | |
| Dual Mirrors | | | |
| Cloth Seats | | | |
| Bucket Seats | | | |
| Reclining/Lounge Seats | | | ✗ |
| Body Side Moldings | | | |
| 4-wheel Disc Brakes | | ✗ | |
| Wheel Covers | | | |
| | | | |
| List Price | | $ 2,500 | $ 1,800 |

**Adjustments:**

| | | | |
|---|---|---|---|
| Make/Model/Trim | | - $ 175 | + $ 475 |
| Mileage | | + $ 26 | - $ 852 |
| Condition¹ | | - $ 382 | - $ 382 |

Updated Date 06/04/2018
2000 Honda Accord Sedan Lx
Automatic 4 2.3l Gasoline Pgm-fi
VIN UNKNOWN
Dealership Procarsonline.com
Telephone (803) 385-2271
Source Dealer Ad
Distance from Greensboro, NC
125 Miles Chester SC

Updated Date 05/06/2018
1999 Honda Accord Coupe Lx Manual
4 2.3l Gasoline Pgm-fi
VIN 1HGCG3143XA018058
Dealership Salem's Auto Sales Llc
Telephone (919) 449-7341
Source Dealer Ad
Distance from Greensboro, NC
49 Miles Durham NC

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

¹The Condition Adjustment sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

 VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GEICO, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include North Carolina Administrative Code Section 11-04-0418

© Copyright 2018 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 83 of 135

# CCC≋ONE MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

 **CARRIER INFORMATION**

**Prepared for:** GEICO

**Web:** Get back on the road fast!

GEICO offers an easy-to-use service designed to help you save time and money.
Simply visit www.geico.com/replaceyourcar today or call
(877)-638-4119 to get started!!

 **VEHICLE HISTORY INFORMATION**

**VINguard®**

VINguard® Message. VINguard has decoded this VIN without any errors.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 84 of 135

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

**ISO Vehicle History:**

| | |
|---|---|
| Number of times reported to ISO: | 8 |
| ISO's file number: | H0275191509 |
| Loss date: | 05/13/2016 |
| Claim ref: | HYT7941002 |
| Point of Impact: | Right Front |
| Mileage: | 0222594 |
| ISO notified: | 05/17/2016 |
| Loss date | 05/13/2016 |
| Phone: | 0000000000 |
| Claim ref | HYT7941002 |
| Mileage | 0000000 |
| ISO notified | 05/17/2016 |
| Loss date | 02/17/2018 |
| Phone: | 0000000000 |
| Claim ref: | 0474663040107031-01 |
| Point of Impact | Right Front |
| Mileage: | 0000000 |
| ISO notified: | 02/20/2018 |
| Loss date: | 07/19/2016 |
| Phone: | 8005828114 |
| Claim ref: | 0474663040107049 |
| Loss date: | 05/13/2016 |
| Phone | 8007596194 |
| Claim ref | HYT7941002 |
| Loss date: | 02/17/2018 |
| Phone: | 8005828114 |
| Claim ref: | 0474663040107031 |
| Loss date | 05/13/2016 |
| Phone | 8005828114 |
| Claim ref | 0474663040107023 |
| Loss date: | 11/09/2012 |
| Claim ref: | 331T53907 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 85 of 135

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | No Abandoned Record Found |
| Damaged | No Damaged Record Found |
| Fire Damage | No Fire Damage Record Found |
| Grey Market | No Grey Market Record Found |
| Hail Damage | No Hail Damage Record Found |
| Insurance Loss | Insurance Loss Record Found |
| Junk | No Junk Record Found |
| Rebuilt | Rebuilt Record Found |
| Salvage | Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | No Frame Damage Record Found |
| Major Damage Incident | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | No Odometer Problem Record Found |
| Recycled | No Recycled Record Found |
| Water Damage | No Water Damage Record Found |
| Salvage Auction | No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | Accident Record Found |
| Corrected Title | No Corrected Title Record Found |
| Driver Education | No Driver Education Record Found |
| Fire Damage Incident | No Fire Damage Incident Record Found |
| Lease | Lease Record Found |
| Lien | No Lien Record Found |
| Livery Use | No Livery Use Record Found |
| Government Use | No Government Use Record Found |
| Police Use | No Police Use Record Found |
| Fleet | No Fleet Record Found |
| Rental | No Rental Record Found |
| Fleet and/or Rental | No Fleet and/or Rental Record Found |
| Repossessed | No Repossessed Record Found |
| Taxi use | No Taxi use Record Found |
| Theft | No Theft Record Found |
| Fleet and/or Lease | Fleet and/or Lease Record Found |
| Emissions Safety Inspection | No Emissions Safety Inspection Record Found |
| Duplicate Title | No Duplicate Title Record Found |

CCC provides GEICO information reported by Experian regarding the 1999 Honda Accord Sedan (1HGCG6641XA141424) This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND**

No Event Found

Event Found

Information Needed

**TITLE CHECK**

AutoCheck's database for this loss vehicle found historical events that might indicate a significant automotive problem. These problems can indicate past automotive damage or warnings associated with the vehicle title.

**EVENT CHECK**

AutoCheck's result for this loss vehicle shows no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle.

**ODOMETER CHECK**

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# SUPPLEMENTAL INFORMATION

📖 **FULL HISTORY REPORT RUN DATE: 07/25/2018**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/01/1999 | TN | 83 | Motor Vehicle Dept | TITLE (Lease Reported) |
| 07/01/1999 | NASHVILLE, TN | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/06/2000 | NASHVILLE, TN | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/23/2000 | NASHVILLE, TN | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/30/2001 | NC | 11418 | Motor Vehicle Dept | TITLE (Lease Reported) |
| 07/30/2001 | WILSON, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/30/2002 | SOUTHEASTERN REGION, | 18535 | Auto Auction | REPORTED AT AUTO AUCTION |
| 08/01/2002 | SOUTHEASTERN REGION, | 18535 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |
| 09/03/2002 | SHELBY, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/08/2002 | SHELBY, NC | 19236 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 09/04/2003 | SHELBY, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/19/2004 | SHELBY, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/27/2004 | CORNELIUS, NC | 56526 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 09/07/2005 | SHELBY, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/09/2006 | SUNSET BEACH, NC | 76807 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 09/13/2006 | SHELBY, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/17/2006 | SC | 90000 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 11/17/2006 | MYRTLE BEACH, SC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/22/2006 | MYRTLE BEACH, SC | | Motor Vehicle Dept. | TITLE (Lien Reported) |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 12/06/2007 | MYRTLE BEACH, SC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/05/2008 | MYRTLE BEACH, SC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/15/2009 | WINSTON SALEM, NC | | Motor Vehicle Dept. | TITLE |
| 12/15/2009 | WINSTON SALEM, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/25/2011 | WINSTON SALEM, NC | 126305 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 01/28/2011 | WINSTON SALEM, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 01/09/2012 | HIGH POINT, NC | 136893 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 01/23/2012 | WINSTON SALEM, NC | | Motor Vehicle Dept | REGISTRATION EVENT/ RENEWAL |
| 01/14/2013 | WINSTON SALEM, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/17/2014 | WINSTON SALEM, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/18/2014 | GREENSBORO, NC | | Motor Vehicle Dept. | TITLE |
| 09/18/2014 | GREENSBORO, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/29/2015 | GREENSBORO, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/25/2016 | GREENSBORO, NC | 214944 | Dealer Service | MULTIPLE POINT VEHICLE INSPECTION |
| 05/13/2016 | GREENSBORO, NC | | State Agency | RIGHT SIDE IMPACT WITH ANOTHER VEHICLE |
| 05/13/2016 | NC | | State Agency | MINOR TO MODERATE DAMAGE REPORTED |
| 05/13/2016 | NC | | State Agency | VEHICLE WAS TOWED |
| 12/21/2016 | GREENSBORO, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/21/2016 | GREENSBORO, NC | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 12/21/2016 | GREENSBORO, NC | | Motor Vehicle Dept. | SALVAGE |
| 12/21/2016 | GREENSBORO, NC | | Motor Vehicle Dept. | INSURANCE LOSS |
| 10/25/2017 | GREENSBORO, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/25/2017 | GREENSBORO, NC | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 88 of 135

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 10/25/2017 | GREENSBORO, NC | | Motor Vehicle Dept. | SALVAGE |
| 10/25/2017 | GREENSBORO, NC | | Motor Vehicle Dept. | INSURANCE LOSS |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable. BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 89 of 135



**Government Employees Insurance Company**
GEICO General Insurance Company
GEICO Indemnity Company
GEICO Casualty Company

Regional Office
4400 Ocmulgee East Blvd.  Macon, GA  31217-0001

**EXHIBIT
E**

## TOTAL LOSS SETTLEMENT EXPLANATION

**Date:**           January 28, 2019           **Loss Date:**  July 19, 2019

**Claim Number:**   0474663040107049

Dear  Natasha Danielle Pierce

This is a brief explanation of your claim settlement:

| | | | |
|---|---|---|---|
| BASE VALUE: | $1,442.00 | | |
| PRE-LOSS DEDUCTION: | $245.99 | | |
| Agreed Value of Vehicle: | $1,196.01 | | |
| Add State Sales Tax: | $36.99 | | |
| Misc. Fees & Adjustments: | $0.00 | | |
| TOTAL: | $1,233.00 | | |
| Less deductible amount (if any): | $0.00 | | |
| Less net value of salvage you retained: | $175.00 | | |
| Less payment to lienholder: | $0.00 | Draft Number: | 0 |
| AMOUNT TO YOU: | $1,058.00 | Draft Number: | 0 |
| Additional Payments: | $0.00 | Draft Number: | 0 |

**NOTICE:**

State law requires that owners of Total Loss or Salvage motor vehicles apply for a salvage Certificate          within 10 days after a Total Loss Settlement.

    ○ Does Apply          ● Does Not Apply

Any state sales tax due the owner through replacement of the vehicle will be considered when notice is          given and purchase Invoice Presented.

    ○ Does Apply          ● Does not apply

Salvage Specialist: Artishea Tripp          Telephone No. 800-691-4312

Customer's Signature:_____

**Please Refer to Your Claim Number When Writing or Calling About This Claim**

Sensitivity: Confidential

Sensitivity: Confidential



**GEICO.**
geico.com

Tel: 1-800-841-3000

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
One GEICO Boulevard
Fredericksburg, VA 22412-0003

Date Issued: May 27, 2017

Item 1:
MS ALICIA AKIM MCIVER

Email Address: mciver.alicia@ymail.com

# Declarations Page

This is a description of your coverage
Please retain for your records.

**Policy Number: 4480-41-88-98**
**Coverage Period:**
03-02-17 through 09-02-17
Based on local time at the address of the named insured,
your coverage began at the later of 12:01am on 03-02-17, or
when initial payment was received, and will expire at
12:01am on 09-02-17.

Endorsement Effective: 05-27-17



EXHIBIT
**F**

| Named Insured | Additional Drivers |
|---|---|
| Alicia A Mciver | None |

| Vehicles | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 2002 Honda | Acrd EXSE | 1HGCG66832A050608 | Wilmington NC 28405 | |
| 2 2003 Nissan | AltimaS/SL | 1N4AL11D83C297336 | Wilmington NC 28405 | |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| A Liability Coverage | | | |
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $92.27 | $98.75 |
| Property Damage Liability | | | |
| Each Occurrence | $50,000 | $71.85 | $76.75 |
| C Combined Uninsured/Underinsured | | | |
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $63.50 | $0.00 |
| Property Damage | | | |
| Each Occurrence | $50,000 | $3.50 | $0.00 |
| D Damage To Your Auto | | | |
| Other Than Collision Loss | Acv Minus $250 | $31.00 | $38.00 |
| Collision Loss | Acv Minus $250 | $101.00 | $116.00 |

T-R
DEC_PAGE (03-14) (Page 1 of 2)

Case 1:20-cv-00839  Document 1-1  Filed 09/11/20  Page 92 of 135

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| Towing & Labor Costs | Non-Ded | $9.80 | $9.80 |
| Extended Transportation Expenses Coverage | $30 Per Day $900 Max | $24.30 | $24.30 |
| Six Month Premium Per Vehicle | | $397.22 | $363.60 |
| Total Six Month Premium | | | $760.82 |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

## Discounts

| | |
|---|---|
| The total value of your discounts is | $262.90 |
| Multi-Car (All Vehicles) | $252.90 |
| Sponsored Group (All Vehicles) | $10.00 |

Contract Type: A6

Contract Amendments: ALL VEHICLES - A295 A6

Unit Endorsements: A113 (VEH 1,2); A115NC (VEH 1,2)

### Important Policy Information

-The physical damage rates on your policy are greater than those promulgated by the state of North Carolina. A form consenting to these rates was previously signed or accepted via verbal authorization.

-You are receiving a $10.00 discount based on your membership in UNCWAA .

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-A credit or discount has been applied to this policy: MULTI-CAR.

-The 2003 NISSAN has been added to your policy.



**GEICO.**
geico.com

Tel: 1-800-841-3000

**GEICO INDEMNITY COMPANY**
One GEICO Boulevard
Fredericksburg, VA 22412-0003

Date Issued: January 23, 2019

Item 1:
NATASHA DANIELLE PIERCE

Email Address: chipmonkee@gmail.com

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**Policy Number: 4308-61-63-50**
**Coverage Period:**
11-18-18 through 05-18-19
Your coverage begins and ends at 12:01am local time at the
address of the named insured.

Endorsement Effective: 02-10-19



**EXHIBIT**
**G**

**NOTICE: THE PREMIUM THAT WE ARE CHARGING FOR AUTOMOBILE PHYSICAL DAMAGE AND RELATED EXPENSES THAT COVERS THE DAMAGE TO YOUR COVERED VEHICLE(S) EXCEEDS THE PREMIUM BASED UPON THE APPROVED RATES IN NORTH CAROLINA. IN ACCORDANCE WITH G.S. 58-36-30(b)**

| Named Insured | Additional Drivers |
|---|---|
| Natasha D Pierce | None |

| Vehicles | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 1999 Honda | Accord LX | 1HGCG5641XA141424 | Greensboro NC 27455 | |
| 2 2001 BMW | 325Ci | WBABS33431JY50331 | Greensboro NC 27455 | |
| 3 2013 Dodge | Grand Cara | 2C4RDGCGXDR822068 | Greensboro NC 27455 | North State Acceptance |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|---|
| A Liability Coverage | | | | |
| Bodily Injury Liability | | | | |
| Each Person/Each Occurrence | $50,000/$100,000 | $69.15 | $69.13 | $69.13 |
| Property Damage Liability | | | | |
| Each Occurrence | $25,000 | $69.83 | $69.83 | $69.83 |

T-N
DEC_PAGE (03-14) (Page 1 of 2)

Coverages Continued on Back
Policy Change Page 3 of 4

"200001430861635032054001224"

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|---|
| C Combined Uninsured/Underinsured Bodily Injury Liability | | | | |
|   Each Person/Each Occurrence | $50,000/$100,000 | $30.00 | $0.00 | $0.00 |
|   Property Damage | | | | |
|   Each Occurrence | $25,000 | $2.50 | $0.00 | $0.00 |
| D Damage To Your Auto | | | | |
|   Other Than Collision Loss | Acv Minus $500 | - | $133.00 | $78.00 |
|   Collision Loss | Acv Minus $500 | - | $269.00 | |
| | Acv Minus $1,000 | - | - | $249.00 |
| **Six Month Premium Per Vehicle** | | $171.48 | $540.96 | $465.96 |
| **Total Six Month Premium** | | | | $1,178.40 |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

---

**Discounts**

| | |
|---|---|
| The total value of your discounts is | $448.50 |
|   Multi-Car (All Vehicles) ............................................... | $448.50 |

Contract Type: A6
Contract Amendments: ALL VEHICLES - A295 A6

---

### Important Policy Information

-The physical damage rates on your policy are greater than those promulgated by the state of North Carolina  A form consenting to these rates was previously signed or was accepted via verbal authorization.

-CTR

-Coverages and/or limits were deleted as you requested or due to state requirements.

-This adjustment is effective 02/10/2019.

---

STATE OF NORTH CAROLINA

GUILFORD COUNTY

ALICIA MCIVER and NATASHA PRICE,
on behalf of themselves and or all others
similarly situated,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY and GEICO INDEMNITY
COMPANY,

      Defendants,

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20-CVS-5934

---

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO
## DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY

Pursuant to Rules 26 and 33 of the North Carolina Rules of Civil Procedure, Plaintiffs Alicia

McIver and Natasha Price ("Plaintiffs") hereby serves the following First Set of Interrogatories on

Defendant Government Employees Insurance Company (hereinafter "GEICO" or "Defendant"), and

asks that these interrogatories be answered separately and completely in writing and signed under

oath. Defendant must provide answers to the interrogatories within 45 days. Please provide your

answer in the space provided after each question; if additional space is necessary, use the back or

additional sheets.

Take notice that these Interrogatories shall be deemed continuing pursuant to N.C.R. Civ. P.

26 and supplemental answers should be provided as they arise. If any interrogatory or portion thereof

cannot be answered fully, the interrogatory should be answered to the extent possible, and the reason

for not fully answering included in the response.

### INSTRUCTIONS

1.    All definitions, instructions, and rules of construction set forth in the North

000026/01271521_1

Carolina Rules of Civil Procedure are incorporated herein by reference.

2.      These interrogatories are intended to cover all items in possession of the **Defendant,** or subject to its custody and/or control, regardless of location. In complying with these Interrogatories, **You** are required to produce all **Documents** specified herein that are in **Your** possession, custody, or control, or are otherwise available to **You.**

3.      If in response to any interrogatory, **Defendant** refuses to answer because of a claim of confidentiality or privilege or for any other reason, **Defendant** shall set forth in detail the facts or the circumstances upon which **Defendant** purports to rely. In addition, **Defendant** is required to produce a privilege log with sufficiently detailed information so as to allow **Plaintiffs** to understand the basis of any asserted claim of privilege.

4.      These interrogatories are meant to apply to North Carolina insureds during the **Class Period.**

5.      These interrogatories are considered to be continuing in nature, and, therefore, **Defendant's** responses shall be supplemented or modified as **Defendant** acquires or discover further information or **Documents** prior to trial in this case.

<u>**DEFINITIONS**</u>

If used herein, the following definitions, apply:

1.      "**Actual cash value**" or "**ACV**" means and refers to the term as used in Defendant's Policy or Policies issued in North Carolina during the relevant time period, which, unless specified elsewhere, is the Class Period.

2.      "**Attachment(s)**" means files or data that are physically or logically associated with or embedded into email and should be identified by mapping to their parent by the **Document** or Production number. If **Attachments** and embedded files are combined with their parent **Documents,** then "BeginAttach" and "EndAttach" fields listing the unique beginning and end

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 97 of 135

number for each **Attachment** or embedded **Document** must be included.

3. **"Class"** or **"Class Members"** means any and all alleged members of the putative class, as defined in the operative Amended Complaint.

4. **"Class Period" relating to** the responsive **Documents** and **ESI** for Defendant, means the three (3) years prior to the date the Complaint was filed until the present. Unless otherwise indicated, all **Document** and **ESI** production and interrogatory requests shall mean for the **Class Period**.

5. **"Communication"** means or refers to the transmittal of information, facts, or ideas **including** communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, **Correspondence**, note, memorandum, e-mail message, telegram, advertisement, or other form of exchange of words, whether oral or written.

6. **"Computer"** and **"Computer equipment"** means all data processing equipment **including** central processing units (CPUs), whether contained in a server or free standing **Computer**, laptop, PDA, or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure, or storage is virtualized, whether that data be structured or unstructured, and **including** any equipment where **Computer** files **(including** without limitation, records, **Documents**, logs, and any other contiguous or non-contiguous bit strings), hidden system files or **Metadata** presently reside such as hard disk drives, optical disk drives, removable **Media**, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives, or snap drives, data processing cards, **Computer** magnetic tapes, backup tapes, drum and disk storage devices, or any other similar electronic storage **Media** or system of whatever name or description.

7. **"Correspondence"** means or refers to all written and unwritten but recorded

communications, **including** non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, **including** memos, letters, analog or digital recordings, voicemail, email, **Computer** files, **Computer** disks, or other **Correspondence** or things sent or received by **You** to or from any entity, **including Correspondence** or files maintained or exchanged internally within **Your** business or with **Your** employees.

8.    "**Data system(s)**" means any **Computer** or software system or server that stores information.

9.    "**Describe**" when used in relation to anything, process, **Policy**, act or event means explain the thing, process, **Policy**, act, or event in complete and reasonable detail, stating the time, date, and location, identifying all persons participating or present, and identifying all **Documents** relating thereto.

10.    "**Document(s)**" means any kind of written, typewritten, printed, recorded, **Computer-** produced or graphic material, however produced or reproduced, **including**, without limitation, brochures, drawings, electronic data, graphs, photographs, films, videotapes, microfilms, microfiche, notices, memoranda, electronic mail, letters, reports, plans, telegrams and telexes, newspaper articles, advertisements, summaries and records of telephone conversations, summaries and records of personal conversations, summaries and records of meetings and conferences, summaries and reports of negotiations or investigations, diaries, questionnaires, commentaries, notebooks, projections, ledger sheets, accounts, bills, invoices, purchase orders, journals, publications, contracts, deposit and withdrawal slips, cancelled checks, records, tapes, transcripts of records and recordings, and business records **relating to** the subject matter to which each interrogatory refers, and **includes**, without limitation, originals, copies, drafts, and any other writings now in the possession, custody, or control of **Defendant**, its agents, employees, attorneys and all other persons acting on its behalf. The word **Document** also

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 99 of 135

includes any "**Electronically stored information**" as set forth in the North Carolina Rules of Civil Procedure.

11. "**Duplicate(s)**" means exact duplicate **ESI Documents**. Only **Documents** where the main **Document** and the **Attachments** are exactly the same will be considered exact **Duplicates**. **ESI** with differing file names but identical hash values shall not be considered **Duplicates**. Exact duplicate shall mean bit-for-bit identicality with both **Document** content and any associated **Metadata**. Where any such **Documents** have **Attachments**, hash values must be identical for both the **Document**—plus the **Attachment** (**including** associated **Metadata**), as well as for any **Attachment** (**including** associated **Metadata**) standing alone.

12. "**Electronically stored information**" or "**ESI**" as used herein, means and refers to **Computer** generated information or data, of any kind, stored on computers, file servers, disks, tapes, or other devices or **Media**, or otherwise evidenced by recording on some storage **Media**, whether real virtual, or cloud based. **ESI includes** any associated **Metadata**.

13. "**Her**" or "**His**" means both "**His**" and "**Her**" and is not limited to the masculine or feminine but **includes** both.

14. "**Identify**," when used with respect to a natural **Person**, means to state the **Person's** full name, present or last known business affiliation and position, home address and past position and business affiliation, if any, with any of the parties herein.

15. "**Identify**," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to **identify** its principal proprietors, officers or director.

16. "**Identify**," when used in reference to an event, transaction, or occurrence, means to **Describe** the act in complete and reasonable detail; state the time, date, and location; **identify** all

persons participating or present; and **identify** all **Documents** relating thereto.

17. "**Include(s)**" and "**Including**" means "including, but not limited to."

18. "**Leased Vehicle(s)**" means any vehicle that is leased by the insured. **Leased vehicle** is used to distinguish **Leased vehicle** insured from owned vehicle insureds.

19. "**Media**" means an object or device, real or virtual, **including** a disc, tape, **Computer**, or other device on which data is or was stored.

20. "**Metadata**" means and refers to data about data, **including** without limitation, information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, which **Describes** the characteristics, origins, usage and validity of the electronic file, as well as information generated automatically by the operation of a **Computer** or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. **Metadata includes**, without limitation, file, application, and system **Metadata**, and **includes** the following fields (to the extent available): **Document** number or production number (**including** the **Document** start and **Document** end numbers). This should use the standard Bates number in accordance with those used in previous productions.

21. "**Native data format**" means and refers to the format of **ESI**, whether structured or unstructured, in which it was generated and as used by the producing party in the usual course of its business and in its regularly conducted activities.

22. "**Owned vehicle(s)**" means any vehicle that is owned by the insured. **Owned vehicle** is used to distinguish **Owned vehicle** insureds from leased vehicle insureds.

23. "**Person**" means or refers to any natural **Person**, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

24. "**Personal identifying information**" means any data that could potentially **identify**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 101 of 135

a specific individual or any information that could be used to distinguish one **Person** from another or any information that could be used on its own or with other information to **identify**, contact, or locate a single **Person**.

25. "**Plaintiffs**" unless otherwise specified refers to **Plaintiffs** as styled above, or any **Person** or entity similarly situated.

26. "**Policy**" or "**Policies**" means or refers to any **Policy**, contract, or agreement affecting and evidencing insurance that, unless otherwise specified, **includes** coverage for first-party motor vehicle total losses during the relevant time period.

27. "**PPA**" means a private passenger auto as it applies to **Defendant's** insurance **Policies**.

28. "**PPA physical damage total loss claim**" means a first-party claim determined by a **Defendant** to be a total loss under a private passenger auto physical damage **Policy** coverage during the **Class Period**.

29. "**Production of paper documents**" means production of paper-based original **Documents** (i.e., **Documents** which were not first generated by a **Computer**, such as handwritten memoranda) shall be produced in hard copy manner.

30. "**Relating to**," **including** its various forms such as "relates to," "in relation to," "with respect to," or "concerning," means to consist of, concern, discuss, mention, pertain, regard, refer to, reflect, or be in any way logically, factually, or legally connected, directly or indirectly, with the matter described and are intended broadly, but not in a way designed to seek information that is irrelevant, or beyond the scope authorized by the Rules of Civil Procedure. Accordingly, the terms should be understood and read in their common, dictionary-sense as meaning "to have to do with, to be of importance to, to involve, or to in some manner, direct or indirect, to evidence, define, **Describe**, or explain." Any objection to an interrogatory on the

ground that it is overbroad, based solely on the use of one or the other of these terms, is therefore not appropriate.

31. **"Sales tax data"** means **Data** related to 1. The amount of **Sales tax** paid in the purchase or lease of the insured total loss vehicle; 2. The amount of **Sales tax** paid to the insured in the total loss settlement as calculated by Defendant and/or any agent, employee, vendor, subsidiary, related company or other such entity or in any **Valuation Report(s)**.

32. **"Sales tax" or "State and local sales tax"**, means the mandatory sales tax collected or assessed by the State of North Carolina and any of its political subdivisions and any North Carolina county, when a vehicle is leased, purchased or sold.

33. **"Tag fee(s)"** means any fees reasonably likely to be incurred or mandated by North Carolina law for the transfer of the license plate (or tag) to a replacement vehicle to be used on North Carolina roadways and highways.

34. **"Title fee(s)"** means any fees mandated by North Carolina law for the transfer of title to the purchaser of a vehicle or the registration of title the purchaser of a vehicle to be used on North Carolina roadways and highways.

35. **"Total Loss Vehicle(s)"** means a PPA insured by **You** that is subject to a PPA **physical damage total loss claim**.

36. **"You," "Your,"** and **"Defendant,"** means or refers to Defendant and its divisions, subsidiaries, related companies, predecessors, and successors, **including** all related corporate entities listed on **Your** Certificate of Interested Persons and Corporate Disclosure Statement in the instant action and to **include** all present and former officers, directors, agents, attorneys, employees, and all persons acting or purporting to act on behalf of any of them.

37. **"Valuation Report(s)"** means a report by any individual or entity acting for **You** that provides any value of a first-party Total Loss Vehicle of a North Carolina insured during the

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 103 of 135

Class Period.

38.    "Vehicle Title and Registration Fees" means Tag fees and/or Title fees.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify Your policy, practice, and procedure (and any change in policy, practice, and procedure) for Your payment (or non-payment) of Sales Tax and/or Vehicle Title and Registration Fees on PPA physical damage total loss claims in North Carolina. Your answer to this interrogatory should include (a) the circumstances in which it is Your policy to defer or condition payment, if any, of Sales Tax and/or Vehicle Title and Registration Fees until incurred by the insured; (b) how You determine the amount of Sales Tax and/or Vehicle Title and Registration Fees to be paid for the claim; (c) the policy language or provisions informing insureds that payment of Sales Tax and/or Vehicle Title and Registration Fees will be deferred or conditioned until it is incurred by the insured; (d) whether any payments are made for such Sales Tax and/or Vehicle Title and Registration Fees; (e) the amount of payments (or method of calculation); and (f) any differences in practice and procedure based on the applicable PPA Policy in each state in which You have done business, whether the vehicle is leased or not, or is owner or insurer retained salvage, whether the Sales Tax and/or Vehicle Title and Registration Fees were incurred or not incurred, the weight of the vehicle, or other variables.

**Response:**

### INTERROGATORY NO. 2

For each and every North Carolina insured first-party PPA physical damage total loss

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 104 of 135

claim made to You, identify:

    a. The insured;

    b. The Policy and claim number;

    c. The date of loss;

    d. All Sales Tax and/or Vehicle Title and Registration Fees payments;

    e. The insured vehicle's VIN number; and

    f. The date and amount of each and every component of payment made to the insured.

    **Response:**

## INTERROGATORY NO. 3

Identify all officers, directors, managing agents, or employees who are or were involved in setting the policies, practices, and procedures for the adjusting and/or settlement of covered PPA physical damage total loss claims in North Carolina.

    **Response:**

**INTERROGATORY NO. 4**

Describe the Data systems in Your custody, possession, and control relating to the first-party PPA physical damage total loss claims, including providing (a) the name of the Data systems, (b) what the Data systems are called and generally used for, and (c) all existing or former data fields for North Carolina first-party PPA physical damage total loss claims in the Data systems, including, for example, the Data system and source of all of the information contained in any total loss explanation, all systems containing Valuation Reports information, and all systems tracking payments made for coverage under PPA Policies.

**Response:**

**INTERROGATORY NO. 5**

Identify the number of insureds to whom You did not pay Sales Tax and/or Tag fees and/or Title fees on their PPA physical damage total loss claims.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 106 of 135

## INTERROGATORY NO. 6

Identify the number of PPA vehicles insured by You in North Carolina that were declared a total loss.

**Response:**

## INTERROGATORY NO. 7

Identify the insureds to whom You did not pay Sales Tax on their PPA physical damage total loss claims, include in Your response whether the insured had an Owned vehicle or leased vehicle.

**Response:**

## INTERROGATORY NO. 8

Identify the insureds to whom You did not pay Tag fees on their PPA physical damage total loss claims, include in Your response whether the insured had an Owned vehicle or leased vehicle.

**Response**

## INTERROGATORY NO. 9

Identify the insureds to whom You did not pay Title fees on their PPA physical damage total loss claims, include in Your response whether the insured had an Owned vehicle or leased vehicle.

**Response:**

## INTERROGATORY NO. 10

Identify all persons who provided factual information in connection with the answers of any of Plaintiff's Interrogatories, and, for each such person, identify his or her position, duties, length of employment, and the specific Interrogatory(ies) for which the person provided information.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 108 of 135

Date: July 27, 2020.

_[signature]_

Daniel K. Bryson, Bar No. 15781
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@whitfieldbryson.com
jeremy@whitfieldbryson.com

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (_pro hac vice_ to be filed)
ostrow@kolawyers.com
Jonathan Streisfeld (_pro hac vice_ to be filed)
streisfeld@kolawyers.com
Josh Levine (_pro hac vice_ to be filed)
levine@kolawyers.com
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-449-4602

**EDELSBERG LAW, P.A.**
Scott Edelsberg (_pro hac vice_ to be filed)
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (_pro hac vice_ to be filed)
ashamis@shamisgentile.com
14 N.E 1ˢᵗ Ave Ste. 1205
Miami, FL 33132
Telephone: 305-479-2299

**DAPEER LAW, P.A.**
Rachel Dapeer (_pro hac vice_ to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

_Counsel for Plaintiffs and Putative Class_

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 109 of 135

## VERIFICATION

_____
Authorized Representative for
GOVERNMENT EMPLOYEES
INSURANCE COMPANY

STATE OF _____

COUNTY OF_____

BEFORE ME, the undersigned authority, personally appeared _____,

and who, being first duly sworn, deposes and says that he/she has read the foregoing _Answers to_

_Plaintiffs' First Set of Interrogatories to Defendant Government Employees Insurance Company_

and that they are true and correct to the best of his/her knowledge and belief.

Sworn to and subscribed before me this _____ day of _____ , 2020.

_____
Notary Public

_____
Printed Name

_____
Date My Commission Expires

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 110 of 135

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20-CVS-5934

ALICIA MCIVER and NATASHA PRICE,
on behalf of themselves and or all others
similarly situated,

       Plaintiffs,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY and GEICO INDEMNITY
COMPANY,

       Defendants,

---

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY

Pursuant to Rules 26 and 34 of the North Carolina Rules of Civil Procedure, Plaintiffs Alicia McIver and Natasha Pierces ("Plaintiffs") hereby serves the following First Request for Production of Documents upon Defendant Government Employees Insurance Company ("GEICO" or "Defendant"), and asks that these requests be answered separately and completely in writing, under oath, and within 45 days. Take notice that these Requests for Production shall be deemed continuing pursuant to Rule 26, and supplemental documents and answers should be provided as they arise.

## INSTRUCTIONS

1.    Prior to the deadline above and prior to providing requested responses the parties should meet and confer and mutually agree on the delivery method of records and the digital format(s), including a protocol for electronically stored information. If, however, no agreement is reached, the requested production must be served on or before the above

000026/01271520_1

1

deadline pursuant to the protocol instructions below.

2. All definitions, instructions, and rules of construction set forth in the North Carolina Court Rules of Civil Procedure are incorporated herein by reference.

3. These requests are intended to cover all items in possession of **Defendant,** or subject to its custody and/or control, regardless of location. In complying with these Interrogatories, **You** are required to produce all **Documents** specified herein that are in **Your** possession, custody, or control, or are otherwise available to **You.**

4. If in response to any **Document** demand, **Defendant** has refused to produce a **Document** because of a claim of confidentiality or privilege or for any other reason, **Defendant** shall set forth in detail the facts or the circumstances upon which **Defendant** purports to rely. In addition, **Defendant** is required to produce a privilege log with sufficiently detailed information so as to allow **Plaintiff** to understand the basis of any asserted claim of privilege.

5. These Requests are meant to apply to North Carolina insureds during the **Class Period.**

6. These Requests are considered to be continuing in nature, and, therefore, **Defendant's** responses shall be supplemented or modified as **Defendant** acquires or discover further information or **Documents** prior to trial in this case.

## DEFINITIONS

If used herein, the following definitions, apply:

1. "**Actual cash value**" or "**ACV**" means and refers to the term as used in Defendant's Policy or Policies issued in North Carolina during the relevant time period, which, unless specified elsewhere, is the Class Period.

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 112 of 135

2. **"Attachment(s)"** means files or data that are physically or logically associated with or embedded into email and should be identified by mapping to their parent by the **Document** or Production number. If **Attachments** and embedded files are combined with their parent **Documents**, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each **Attachment** or embedded **Document** must be included.

3. **"Class"** or **"Class Members"** means any and all alleged members of the putative **class**, as defined in the operative Complaint.

4. **"Class Period" relating to** the responsive **Documents** and **ESI** for Defendant, means the three (3) years prior to the date the Complaint was filed until the present. Unless otherwise indicated, all **Document** and **ESI** production and interrogatory requests shall mean for the **Class Period**.

5. **"Communication"** means or refers to the transmittal of information, facts, or ideas **including** communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, **Correspondence**, note, memorandum, e-mail message, telegram, advertisement, or other form of exchange of words, whether oral or written.

6. **"Computer"** and **"Computer equipment"** means all data processing equipment **including** central processing units (CPUs), whether contained in a server or free standing **Computer**, laptop, PDA, or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure, or storage is virtualized, whether that data be structured or unstructured, and **including** any equipment where **Computer** files (**including** without limitation, records, **Documents**, logs, and any other contiguous or non-contiguous bit strings), hidden system files or **Metadata** presently reside

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 113 of 135

such as hard disk drives, optical disk drives, removable **Media**, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives, or snap drives, data processing cards, **Computer** magnetic tapes, backup tapes, drum and disk storage devices, or any other similar electronic storage **Media** or system of whatever name or description.

       7.     "**Correspondence**" means or refers to all written and unwritten but recorded communications, **including** non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, **including** memos, letters, analog or digital recordings, voicemail, email, **Computer** files, **Computer** disks, or other **Correspondence** or things sent or received by **You** to or from any entity, **including Correspondence** or files maintained or exchanged internally within **Your** business or with **Your** employees.

       8.     "**Data system(s)**" means any **Computer** or software system or server that stores information.

       9.     "**Describe**" when used in relation to anything, process, **Policy**, act or event means explain the thing, process, **Policy**, act, or event in complete and reasonable detail, stating the time, date, and location, identifying all persons participating or present, and identifying all **Documents** relating thereto.

      10.    "**Document(s)**" means any kind of written, typewritten, printed, recorded, **Computer**- produced or graphic material, however produced or reproduced, **including**, without limitation, brochures, drawings, electronic data, graphs, photographs, films, videotapes, microfilms, microfiche, notices, memoranda, electronic mail, letters, reports, plans, telegrams and telexes, newspaper articles, advertisements, summaries and records of telephone conversations, summaries and records of personal conversations, summaries and records of meetings and conferences, summaries and reports of negotiations or

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 114 of 135

investigations, diaries, questionnaires, commentaries, notebooks, projections, ledger sheets, accounts, bills, invoices, purchase orders, journals, publications, contracts, deposit and withdrawal slips, cancelled checks, records, tapes, transcripts of records and recordings, and business records **relating to** the subject matter to which each interrogatory refers, and **includes**, without limitation, originals, copies, drafts, and any other writings now in the possession, custody, or control of **Defendant**, its agents, employees, attorneys and all other persons acting on its behalf. The word **Document** also **includes** any "**Electronically stored information**" as set forth in the North Carolina Rules of Civil Procedure.

11. "**Duplicate(s)**" means exact duplicate **ESI Documents**. Only **Documents** where the main **Document** and the **Attachments** are exactly the same will be considered exact **Duplicates**. **ESI** with differing file names but identical hash values shall not be considered **Duplicates**. Exact duplicate shall mean bit-for-bit identicality with both **Document** content and any associated **Metadata**. Where any such **Documents** have **Attachments**, hash values must be identical for both the **Document**—plus the **Attachment** (including associated **Metadata**), as well as for any **Attachment** (including associated **Metadata**) standing alone.

12. "**Electronically stored information**" or "**ESI**" as used herein, means and refers to **Computer** generated information or data, of any kind, stored on computers, file servers, disks, tapes, or other devices or **Media**, or otherwise evidenced by recording on some storage **Media**, whether real virtual, or cloud based. **ESI includes** any associated **Metadata**.

13. "**Her**" or "**His**" means both "**His**" and "**Her**" and is not limited to the masculine or feminine but **includes** both.

14. "**Identify**," when used with respect to a natural **Person**, means to state the

5

Person's full name, present or last known business affiliation and position, home address and past position and business affiliation, if any, with any of the parties herein.

15. "**Identify,**" when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to **identify** its principal proprietors, officers or director.

16. "**Identify,**" when used in reference to an event, transaction, or occurrence, means to **Describe** the act in complete and reasonable detail; state the time, date, and location; **identify** all persons participating or present; and **identify** all **Documents** relating thereto.

17. "**Include(s)**" and "**Including**" means "including, but not limited to."

18. "**Leased Vehicle(s)**" means any vehicle that is leased by the insured. **Leased vehicle** is used to distinguish **Leased vehicle** insured from owned vehicle insureds.

19. "**Media**" means an object or device, real or virtual, **including** a disc, tape, **Computer**, or other device on which data is or was stored.

20. "**Metadata**" means and refers to data about data, **including** without limitation, information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, which **Describes** the characteristics, origins, usage and validity of the electronic file, as well as information generated automatically by the operation of a **Computer** or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. **Metadata includes**, without limitation, file, application, and system **Metadata**, and **includes** the following fields (to the extent

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 116 of 135

available): **Document** number or production number (**including** the **Document** start and **Document** end numbers). This should use the standard Bates number in accordance with those used in previous productions.

21. "**Native data format**" means and refers to the format of **ESI**, whether structured or unstructured, in which it was generated and as used by the producing party in the usual course of its business and in its regularly conducted activities.

22. "**Owned vehicle(s)**" means any vehicle that is owned by the insured. **Owned vehicle** is used to distinguish **Owned vehicle** insureds from leased vehicle insureds.

23. "**Person**" means or refers to any natural **Person**, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

24. "**Personal identifying information**" means any data that could potentially identify a specific individual or any information that could be used to distinguish one **Person** from another or any information that could be used on its own or with other information to identify, contact, or locate a single **Person**.

25. "**Plaintiffs**" unless otherwise specified refers to **Plaintiffs** as styled above, or any **Person** or entity similarly situated.

26. "**Policy**" or "**Policies**" means or refers to any **Policy**, contract, or agreement affecting and evidencing insurance that, unless otherwise specified, **includes** coverage for first-party motor vehicle total losses during the relevant time period.

27. "**PPA**" means a private passenger auto as it applies to **Defendant's** insurance Policies.

28. "**PPA physical damage total loss claim**" means a first-party claim determined by a **Defendant** to be a total loss under a private passenger auto physical damage **Policy**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 117 of 135

coverage during the **Class Period.**

29. **"Production of paper documents"** means production of paper-based original **Documents** (i.e., **Documents** which were not first generated by a **Computer,** such as handwritten memoranda) shall be produced in hard copy manner.

30. **"Relating to," including** its various forms such as "relates to," "in relation to," "with respect to," or "concerning," means to consist of, concern, discuss, mention, pertain, regard, refer to, reflect, or be in any way logically, factually, or legally connected, directly or indirectly, with the matter described and are intended broadly, but not in a way designed to seek information that is irrelevant, or beyond the scope authorized by the Rules of Civil Procedure. Accordingly, the terms should be understood and read in their common, dictionary-sense as meaning "to have to do with, to be of importance to, to involve, or to in some manner, direct or indirect, to evidence, define, **Describe,** or explain." Any objection to an interrogatory on the ground that it is overbroad, based solely on the use of one or the other of these terms, is therefore not appropriate.

31. **"Sales tax data"** means **Data** related to 1. The amount of **Sales tax** paid in the purchase or lease of the insured total loss vehicle; 2. The amount of **Sales tax** paid to the insured in the total loss settlement as calculated by Defendant and/or any agent, employee, vendor, subsidiary, related company or other such entity or in any **Valuation Report(s).**

32. **"Sales tax" or "State and local sales tax",** means the mandatory sales tax collected or assessed by the State of North Carolina and any of its political subdivisions and any North Carolina county, when a vehicle is leased, purchased or sold.

33. **"Tag fee(s)"** means any fees reasonably likely to be incurred or mandated by North Carolina law for the transfer of the license plate (or tag) to a replacement vehicle to be

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 118 of 135

used on North Carolina roadways and highways.

34. **"Title fee(s)"** means any fees mandated by North Carolina law for the transfer of title to the purchaser of a vehicle or the registration of title the purchaser of a vehicle to be used on North Carolina roadways and highways.

35. **"Total Loss Vehicle(s)"** means a PPA insured by **You** that is subject to a **PPA physical damage total loss claim.**

36. **"You," "Your,"** and **"Defendant,"** means or refers to Defendant and its divisions, subsidiaries, related companies, predecessors, and successors, **including** all related corporate entities listed on **Your** Certificate of Interested Persons and Corporate Disclosure Statement in the instant action and to **include** all present and former officers, directors, agents, attorneys, employees, and all persons acting or purporting to act on behalf of any of them.

37. **"Valuation Report(s)"** means a report by any individual or entity acting for **You** that provides any value of a first-party Total Loss Vehicle of a North Carolina insured during the **Class Period.**

38. **"Vehicle Title and Registration Fees"** means **Tag** fees and/or **Title fees.**

### TECHNICAL SPECIFICATIONS OF PRODUCTION RESPONSIVE TO THESE REQUESTS FOR PRODUCTION

Plaintiff requests that Defendant produce the responsive Documents and data in a format consistent with the following Technical Specifications for Production.

1. <u>Production of **Documents** originating as paper.</u>

For **Documents** that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- **Media** may be delivered on CDs, DVDs, External USB hard drives, or via a secure file share site. Each **Media** volume should have its own unique name which will be consistent through the matter, for example SNIC0001, SNIC 0002, SNIC 0003 detailing the naming convention for three separate pieces of production **Media**.

- Each delivery should be accompanied by an image cross reference file that contains **Document** breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum **include** Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator: "|"

    Quote Character: "~"

    Multi-Entry Delimiter: ";"

2.    Production of Email and Electronically stored information.

**ESI** and electronic **Documents** should be produced in such fashion as to **identify** the location (i.e., the network file folder, hard drive, back-up tape or other location) where the **Documents** are stored and, where applicable, the natural **Person** in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent **Documents** should also be produced and proximately linked to the respective parent **Documents** containing the **Attachments**, enclosures, and/or exhibits.

For standard **Documents**, emails, and presentations originating in electronic form, **Documents** should be produced as TIFF images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted **Metadata** fields:

   Beginning Production Number Ending Production Number Beginning

   **Attachment** Range Ending **Attachment** Range Custodian

   Original Location Path Email Folder Path **Document** Type Author

   File Name Size

   MD5

   Hash Date Last

   Modified Date Created

   Date Last Accessed Date Sent

   Date Received Recipients Copies

   Blind Copies Email Subject Path to Native

- Extracted full text (not OCR text) should also be delivered for each **ESI** and electronic **Document**. Text should be delivered on a **Document** level in an appropriately formatted text file (.txt) that is named to match the first bates number of the **Document**.

- A text cross reference load file should also be included with the production

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 121 of 135

delivery that lists the beginning bates number of the **Document** and the relative path to the text file for that **Document** on the production **Media**.

- Foreign language text files and **Metadata** should be delivered with the correct encoding to enable the preservation of the **Documents'** original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the **Attachment** Range fields above. The extractable **Metadata** and text should be produced in the same manner as other **Documents** that originated in electronic form. The parties agree to work out a future protocol governing the use and format of **Documents** produced pursuant to this paragraph at trial, depositions or hearings (such as converting to TIFF images in accordance with the above protocol).

- Notwithstanding the language of the Rules of Civil Procedure, upon review the requesting party may ask for certain limited sets of **Documents** and/or databases that were initially produced in their TIFF or pdf format to be produced in their native format in the event that the produced version is not reasonably usable. If this is the case, the requesting party will submit a list of bates numbers identifying the **Documents**. The **Documents** should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that

Beginning Production Number Ending Production Number Beginning **Attachment** Range Ending **Attachment** Range Path to Native File MD5 Hash Value

000076/01271520_1.

3.    Production of databases and other structured data

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the **Document** requests, a list of databases and systems used to manage relevant data should be provided with the following information, to the extent it is readily available: Database Name; Type Of Database; Software Platform; Software Version; Business Purpose; Users; Size in Records; Gigabyte; A List of Standard Reports Database Owner or Administrator's Name Field List; Field Definitions (**including** field type, size and use)

Upon review of the list, the parties may agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

All Documents, such as total loss guides, that identify all Sales Tax and/or Vehicle Title and Registration Fees, or other fees that are included (or not included) as part of North Carolina first-party PPA physical damage total loss claims, including guides, charts, or reference documents used by adjusters, sales representatives, salvage representatives, or other employees to determine what taxes and fees are paid by Defendant on first- party PPA physical damage total loss claims in each state for owned vehicles and leased vehicles, owner retained salvage vehicles, insurer retained salvage vehicles, and other circumstances.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 123 of 135

**REQUEST FOR PRODUCTION NO. 2**

All Documents relating to any affirmative defense You assert in this action.

**Response:**

**REQUEST FOR PRODUCTION NO. 3**

All Documents related to Plaintiffs, including to the entire claim file(s) for Plaintiffs, all Communications between You and Plaintiffs, all Documents exchanged between You and Plaintiffs, and the insurance Policy, including all subparts, addenda, amendments, and endorsements between Defendant and Plaintiffs for the Class Period.

**Response:**

**REQUEST FOR PRODUCTION NO. 4**

Exemplars of each automobile insurance Policy that provides coverage for first-party PPA physical damage total loss claims issued by You in North Carolina during the Class Period, including exemplars of any subparts, addenda, amendments, or endorsements to the Policies or forms that relate in any way to the payment or nonpayment of ACV and/or Sales Tax and/or Vehicle Title and Registration Fees on insured Total Loss Vehicles.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 124 of 135

## REQUEST FOR PRODUCTION NO. 5

All Documents that set forth or explain Defendant's practices and procedures during the Class Period for paying (or not paying) and for calculating ACV and/or Sales Tax and/or Vehicle Title and Registration Fees on first-party PPA physical damage total loss claims, including all Documents that relate to any different practice or procedure to be applied based on differing circumstances of the claims such as whether Sales Tax and/or Vehicle Title and Registration Fees were incurred, whether the vehicle is leased, whether the vehicle has a lien, the weight of the vehicle, and any other factor that may affect the Policy or procedure for paying (or not paying) Sales Tax and/or Vehicle Title and Registration Fees on a first-party PPA physical damage total loss claim.

**Response:**


## REQUEST FOR PRODUCTION NO. 6

All Documents and Communications between Defendant and the North Carolina Department of Insurance relating in any way to (1) coverage issues for ACV and total loss claims; or (2) whether Sales Tax and/or Vehicle Title and Registration Fees are or should be covered under a first-party PPA physical damage total loss claim. This request is not limited by the Class Period.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 125 of 135

**REQUEST FOR PRODUCTION NO. 7**

      All Documents relating to any North Carolina insured requesting payment (or complaining about lack of payment) for Sales Tax and/or Vehicle Title and Registration Fees, or asking whether Sales Tax and/or Vehicle Title and Registration Fees are covered under their PPA physical damage total loss claim, or expressing disagreement or a complaint that Sales Tax and/or Vehicle Title and Registration Fees were not covered under their total loss claim.

      **Response:**


**REQUEST FOR PRODUCTION NO. 8**

      All Documents, training materials, guidelines, booklets, manuals, procedures, talking points, policies, and scripts that include the terms or otherwise reference ACV or Sales Tax and/or Vehicle Title and Registration Fees in the context of first-party PPA physical damage total loss claims that have been provided at any time to claim adjusters, claim handling agents, claim representatives, salvage specialists, other of Defendant's representatives whose job includes communicating with insureds relating to their auto claims, or persons whose job includes determining the amounts owed or coverage provided on first-party PPA physical damage total loss claims.

      **Response:**


**REQUEST FOR PRODUCTION NO. 9**

      All Documents and training materials (including all reference materials, power points, handouts, training guides, quizzes and tests, training documents, guidelines or other documents

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 126 of 135

or things) used at any time during the Class Period for training salvage specialists that were assigned or otherwise worked on North Carolina first-party PPA physical damage total loss claims. Such documents and training materials must be produced relating to the payments or non-payment of any fees, how to identify leased vehicles, negotiations, contract interpretation, dispute resolution, definition of actual cash value, definition of replacement cost, what is covered on total loss claims, securing title on Total Loss Vehicles, and security letters of guarantee.

**Response:**


## REQUEST FOR PRODUCTION NO. 10

All Documents, including reference materials (at any time during the Class Period) available to salvage specialists that are assigned or otherwise work on North Carolina first-party PPA physical damage total loss claims that relate to (1) what ACV means; (2) what replacement costs mean; (3) what governmental fees are paid on North Carolina first-party PPA physical damage total loss claims; and (4) any other information as to what payments are provided as part of coverage for first-party PPA physical damage total loss claims.

**Response:**


## REQUEST FOR PRODUCTION NO. 11

All internal claims and underwriting Communications regarding whether, when, and under what circumstances any of Defendant's PPA policies in the Class Period require payment of any of the following on first-party PPA physical damage total loss claims: (a)

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 127 of 135

Sales Tax, (b) Tag fees, and (c) Title fees.

**Response:**


## REQUEST FOR PRODUCTION NO. 12

All Documents relating to any differences in circumstances (e.g. when incurred, when requested or demanded) or coverages for Sales Tax and/or Vehicle Title and Registration Fees on first party PPA physical damage total loss claims among or between policies that You issue in North Carolina.

**Response:**


## REQUEST FOR PRODUCTION NO. 13

All Documents necessary to identify any practices or procedures relating to the payment of Sales Tax and/or Vehicle Title and Registration Fees on first-party PPA physical damage total loss claims prior to the Class Period irrespective of when or whether such costs were incurred, as well as the dates during which the practice or procedure was in place.

**Response:**


## REQUEST FOR PRODUCTION NO. 14

All Documents regarding any instance where Defendant paid Sales Tax and/or Vehicle Title and Registration Fees on a first-party PPA physical damage total loss claim.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 128 of 135

**REQUEST FOR PRODUCTION NO. 15**

Exemplars of all form Communications and disclosures during the Class Period made by Defendant to North Carolina insureds who made first-party PPA physical damage total loss claims that reference or explain (1) practices and procedures relating to total loss claims; (2) coverages provided for total loss claims (including any total loss explanations); (3) ACV; or (4) Sales Tax and/or Vehicle Title and Registration Fees.

**Response:**

**REQUEST FOR PRODUCTION NO. 16**

All Documents, forms, and scope of work descriptions that set forth the information to be included in Valuation Reports for first-party PPA physical damage total loss claims made to Defendant, including any Document that sets out whether the Valuation Report should or should not include items such as Sales Tax, Vehicle Title and Registration Fees, depreciation, condition adjustments, or other fees.

**Response:**

**REQUEST FOR PRODUCTION NO. 17**

All contracts and agreements with Valuation Reports relating in any way to the provision of Valuation Reports for North Carolina first-party PPA physical damage total loss claims.

**Response:**

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 129 of 135

## REQUEST FOR PRODUCTION NO. 18

Documents sufficient to show the name and contact information of every company or organization that provided Valuation Reports on North Carolina first-party PPA physical damage total loss claims during the Class Period.

**Response:**


## REQUEST FOR PRODUCTION NO. 19

All data identifying, for each North Carolina PPA physical damage total loss Claim, the following:

    a. Claim number;

    b. Name and address of owner or lessee of loss vehicle;

    c. Titled owner of the loss vehicle;

    d. Policy number;

    e. Insured name and address;

    f. Adjuster ID;

    g. Adjuster name;

    h. Loss location;

    i. Date of loss;

    j. All Loss vehicle information;

    k. Loss vehicle VIN number;

    l. Loss vehicle's Actual cash value;

    m. Deductible (and whether applied, waived, or reimbursed);

    n. Whether the vehicle was leased;

o. Name of lessor (if applicable);

p. All Sales Tax paid or sales tax calculated even if not paid;

q. All Vehicle Title and Registration Fees, or other fees paid, or Vehicle Title and Registration Fees or other fees calculated but not paid;

r. Owner retained or insurer retained salvage;

s. Whether claim was for comprehensive or collision coverage;

t. All lienholders and lien amounts;

u. All payment data (including claim number, claim symbol, rated state, FCC, loss date, entry date/time, transaction amount, used-ID, check number, company, Payee 1, Payee 2, Mail Address, Mail Address 1, Mail Address 2, Mail Address 3, Reason for Payment, Memo 1, Memo 2, Memo3, Memo4, payment amounts, dates);

v. All lienholder data including lienholder name, lienholder account number, lienholder address 1, lienholder address 2, lienholder address 3, lienholder city, lienholder state.

w. All title and salvage information including data in any special instructions field, GAP insurance indicator, owner equity amount, lienholder amount paid, lienholder amount owed, per diem, title held by lienholder, title state, verify title names data, title owner first name, title owner middle name, title owner last name, primary title name, verify payoff amount data, and payoff good until data.

x. All data identifying additional interests, and additional interest names, including all data that identifies additional insured, lienholders, and other additional interests;

y. All claims payment data including payment date, amount, payee, reason for payment, (e.g., ACV, Sales Tax, Vehicle Title and Registration Fees, registration fees, government fees, personal property reimbursement, towing payment/reimbursement,

Case 1:20-cv-00839   Document 1-1   Filed 09/11/20   Page 131 of 135

vehicle breakdown, rental vehicle, etc.), and coverage for which payment was made (e.g., collision or PIP), and

z. And other data relating to the first-party PPA physical damage total loss claim. Excluded from this request are payments under coverage other than first-party PPA physical damage and data for payments to medical providers, or payments to third parties for property damage to vehicles other than the insured's vehicle, payments for pain and suffering, medical expenses, and lost wages, and all payments under liability coverage.

**Response:**

## REQUEST FOR PRODUCTION NO. 20

Documents sufficient to identify the data fields and field definitions for all data maintained by Defendant for North Carolina first-party PPA physical damage total loss claims.

**Response:**

## REQUEST FOR PRODUCTION NO. 21

All data that has been provided to Defendant from any valuation provider, and all data that is available to Defendant from any valuation providers for any North Carolina first-party PPA physical damage total loss claim, including any historical valuation data maintained by a valuation provider or third party that makes such data available to Defendant in the course of business upon request (for example by intranet or other secure Computer link).

**Response:**

**REQUEST FOR PRODUCTION NO. 22**

All Documents relating to any consideration or determination by Defendant regarding which fees, costs, and taxes (including Sales Tax or Vehicle Title and Registration Fees) are covered under North Carolina first-party PPA physical damage total loss claims.

**Response:**

**REQUEST FOR PRODUCTION NO. 23**

All Documents relating to any assertion that the Policy does or does not require that the Defendant pay Sales Tax and/or Vehicle Title and Registration Fees in the case of a total loss of an insured vehicle.

**Response:**

**REQUEST FOR PRODUCTION NO. 24**

All Documents that You contend relate to incorrect or erroneous payments to any putative Class Members for a first-party PPA physical damage total loss claim (e.g., an overpayment or underpayment).

**Response:**

**REQUEST FOR PRODUCTION NO. 25**

All Documents evidencing any policy, guideline, or procedure that Sales Tax and/or Vehicle Title and Registration Fees are not included in the determination of the ACV of a Total Loss Vehicle under a North Carolina first-party PPA physical damage total loss claim.

**Response:**

## REQUEST FOR PRODUCTION NO. 26

Produce a random selection of a statistically significant number[1] of files of North Carolina first-party insureds with PPA physical damage total loss claims during the Class Period. Note: Plaintiffs requests that Defendant provide a list, by claim number, of all North Carolina first-party insureds with PPA physical damage total loss claims during the Class Period. From this list, Plaintiffs will randomly select 1,000 claim files to be produced.

**Response:**


## REQUEST FOR PRODUCTION NO. 27

All Documents that relate to each and every change in the method of Communication to first-party PPA physical damage total loss claimants during the Class Period as to the coverage provided for Sales Tax and/or Vehicle Title and Registration Fees by form name/number/title, dates of use, and a description of the claims for which it was used.

**Response:**


## REQUEST FOR PRODUCTION NO. 28

All Documents relating to any release or other Document waiving or releasing any first-party PPA physical damage total loss claim for Sales Tax and/or Vehicle Title and Registration Fees during the Class Period.

**Response:**

---

[1] Plaintiffs will meet and confer with Defendant to determine this amount.

Dated: July 29, 2020

Daniel K. Bryson, Bar No. 15781
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@whitfieldbryson.com
jeremy@whitfieldbryson.com

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
ostrow@kolawyers.com
Jonathan Streisfeld (*pro hac vice* to be filed)
streisfeld@kolawyers.com
Josh Levine (*pro hac vice* to be filed)
levine@kolawyers.com
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-449-4602

**EDELSBERG LAW, P.A.**
Scott Edelsberg (*pro hac vice* to be filed)
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (*pro hac vice* to be filed)
ashamis@shamisgentile.com
14 N.E 1ˢᵗ Ave Ste. 1205
Miami, FL 33132
Telephone: 305-479-2299

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice* to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

*Counsel for Plaintiffs and Putative Class*

000026/01271920_1

25